**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | **CRIMINAL NO. 05-440** |
| ALTON COLES, ET AL. | : | |

**ORDER**

And now, this        day of                         , 2007, having

considered the Government's Motion for an Anonymous Jury Panel and Heightened Jury

Security and all responses thereto, the Court finds that there are legitimate concerns as to juror

safety, courtroom security, and protecting the trial process from outside influences such as

extensive media coverage, such that an anonymous jury panel is justified in this case.

Accordingly, it is hereby **ORDERED** as follows:

    (1)    The Government's Motion is **GRANTED**;

    (2)    The names, addresses, and places of employment of the prospective trial jurors in this case shall be withheld from the parties, the attorneys, and the public, and shall not be revealed;

    (3)    The jurors shall be sequestered at lunch and recess under the protection of the United States Marshal's Service, and shall be transported each trial day to and from an undisclosed central location, from which the jurors can commute to and from their respective communities.  No unauthorized person shall be permitted to follow any such vehicle or juror to or from the designated locations; and

    (4)    A metal detector shall be placed directly outside the courtroom and all members of the public attending the trial shall show photographic

identification, sign a visitor's log, and leave behind all electronic

equipment, including cell phones and PDAs, prior to entering the

courtroom.

BY THE COURT:

_____
R. BARCLAY SURRICK
Judge, United States District Court
Eastern District of Pennsylvania

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**UNITED STATES OF AMERICA**      :

      **v.**             :         **CRIMINAL NO. 05-440**

**ALTON COLES, ET AL.**      :

## GOVERNMENT'S MOTION FOR AN
## ANONYMOUS JURY PANEL AND HEIGHTENED JURY SECURITY

The United States of America, by and through its undersigned attorneys, respectfully moves this Court to empanel an anonymous jury panel and provide for heightened jury security at the trial of this case, which is presently scheduled for January 7, 2008. Specifically, the government requests that the names, addresses, and places of employment of the prospective jurors not be revealed to the parties, the attorneys, or the public. To further protect juror anonymity, the government also requests that the jurors be sequestered during lunch and recesses under the protection of the United States Marshal's Service; that they be transported each trial day to and from an undisclosed central location, from which the jurors may commute to and from their respective communities; and that no unauthorized person shall be permitted to follow any such vehicle or juror to or from the designated locations. Last, to protect the government's cooperating witnesses and their families from being threatened, the government requests that a metal detector be placed directly outside the courtroom and that all members of the public attending the trial shall show photographic identification, sign a visitor's log, and leave behind all electronic equipment, including cell phones and PDAs, prior to entering the courtroom.

For the reason addressed in the attached Memorandum in Support of Government's Motion for an Anonymous Jury Panel and Heightened Jury Security, these

precautions are essential in this case. With adequate voir dire and appropriate instructions, use of these measures will not infringe on the defendants' rights in any way.

WHEREFORE, the government respectfully requests that the Court grant the government's motion and enter an Order directing that the names, addresses and places of employment of the jurors and voir dire panel in this case not be disclosed to the parties, counsel, or the public, and requiring that the jurors be sequestered at lunch and recesses, and transported to and from court, under the protection of the United States Marshal's Service, and that a metal detector be placed directly outside the courtroom and all members of the public attending the trial shall show photographic identification, sign a visitor's log, and leave behind all electronic equipment, including cell phones and PDAs, prior to entering the courtroom.

Respectfully submitted,

PATRICK L. MEEHAN
United States Attorney
Eastern District of Pennsylvania


/s/ Richard A. Lloret
RICHARD A. LLORET
Assistant United States Attorney


/s/ Michael J. Bresnick
MICHAEL J. BRESNICK
Assistant United States Attorney

DATE: October 26, 2007

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 05-440** |
| **ALTON COLES, ET AL.** | : | |

**MEMORANDUM IN SUPPORT OF GOVERNMENT'S MOTION
FOR AN ANONYMOUS JURY PANEL AND HEIGHTENED JURY SECURITY**

The United States of America, by and through its attorneys, respectfully submits

this memorandum in support of the Government's Motion for an Anonymous Jury Panel and

Heightened Jury Security, as to the trial of Alton Coles, James Morris, Timothy Baukman, Asya

Richardson, Monique Pullins, and Thais Thompson.  The trial is scheduled to commence on

January 7, 2008.

I.      **INTRODUCTION**

The Court, in deciding this motion, should be aware that the Honorable Harvey

Bartle, III, Chief Judge of this District, successfully employed an anonymous jury that was semi-

sequestered in the recent Breed motorcycle gang case.  See United States v. John Napoli, et al.,

Crim No. 07-75.  Also, the Honorable Gene E.K. Pratter, in the recent Latin Kings trials,

employed a similar procedure.  See United States v. William Sosa, et al., Crim. No. 05-44, and

United States v. Edwin Irizarry, Crim. No. 05-44-4.  Further, in another large-scale drug gang

case before the Honorable Stuart Dalzell, the court ordered shortly after the trial began that the

jury be semi-sequestered because certain associates of the defendants appeared to be attempting

to harass the jury in the public hallways and the elevators, and because the number of threats to

witnesses during the first week of trial caused the Court to be concerned for the safety of jurors.

See United States v. Courtney Carter, et al., Crim. No. 02-172. The procedures used in those trials, and requested here, were successful because they effectively secured the integrity of the trial and eliminated the risk of exposing jurors to outside influences, including defendants' friends, family members, and fellow gang members who attended the trial (of which there were many), as well as the potential that a juror might hear a stray comment from a litigant, witness, or other member of the public. The procedures also provided the jury with the requisite comfort level necessary to hear the cases and deliberate on the guilt or innocence of the defendants without fear of later being identified and accosted. There is no reason to believe that such procedures employed in the trial of Alton Coles and his co-defendants would not be at least as successful as they were in the trial of the Breed motorcycle gang, the Latin Kings defendants, and the Carter defendants.

It is also noteworthy that, during these recent trials there were no complaints from the jurors as to either the anonymous nature of the jury nor the partial sequestration measures employed. Likewise, at no time did any jurors express any concern or hesitation regarding their service due to these measures; nor did they express any belief that the measures connoted anything negative as to the defendants themselves. Judge Pratter, in fact, advised her juries, as the Court could do so here, that these measures were not unusual and should not cause them any concern. There is no evidence that any juror harbored any undue concerns

Like the motorcycle gang, the Latin Kings, as well the Courtney Carter drug gang, Alton Coles and his co-defendants are charged with multiple crimes of violence. The indictment carefully details the violent nature of the Coles Cocaine Gang and its members, revealing the threat they pose to the public and potential witnesses in this case. For example, counts 182 and 183 describe a gun battle between Coles's gang, including Jamar Campbell,

3

Timothy Baukman and others, and a rival faction, which occurred on October 22, 2004, on Kingsessing Street in West Philadelphia. The battle took place just a few yards from a school-yard, and a block from a church. Two people were shot, one was left for dead, but saved by police, and police recovered 54 fired cartridge casings ("FCCs") fired from at least seven firearms.[1]

Jamar Campbell, who had been working before indictment as a volunteer fireman for the Green Ridge Fire Company in Delaware County, is charged with carrying a loaded firearm to protect approximately 311 grams of cocaine, including 187 grams of cocaine he had hidden in the fire boots he was issued in order to protect and serve the public. See Indictment at Count One, Overt Act # 46, Counts 35-38. The gun taken from Campbell during this arrest, which occurred on May 16, 2005, matched many of the fired cartridge casings recovered by police after the October 22, 2004 fire-fight. As the Court heard during the pre-trial suppression motion concerning Campbell, defendant began drawing his gun on police when they arrested him on May 16, 2005. Alton Coles also "drew" on a police officer during an arrest.

The indictment also recounts the large numbers of firearms seized from various defendants.[2] The arsenal stored by defendants Coles, Baukman, and Donte Tucker at 339 East Essex Avenue, Apartment B, in Lansdowne, Pennsylvania, included a total of 10 firearms - shotguns, rifles, semi-automatic handguns, and revolvers - together with 384 additional loose rounds of ammunition, 459 grams of cocaine, and a 12-ton hydraulic press used to form cocaine

---

[1] Police recovered 15 .40 caliber FCCs fired from three different weapons, and 39 9 millimeter FCCs fired from four different weapons. In addition to the 54 identifiable FCCs, police recovered other ballistic evidence, including projectiles, that were not in condition to permit identification.

[2] The government seeks forfeiture of a total of 31 firearms, along with a wide variety of ammunition.

powder into "bricks" of kilogram quantities for sale.  See Indictment at Count One, Overt Act #

79, Count 68.  Baukman also is charged in Count 63 with possessing three additional loaded

firearms, one of which further testing has revealed was converted to an automatic weapon, to

advance the goals of the drug gang, in violation of 18 U.S.C. § 924(c)(1).  See Indictment at

Count 63.

Defendant Alton Coles himself is charged with six counts of possessing firearms

in furtherance of drug trafficking, as well as one count of using and carrying firearms during and

in relation to drug trafficking.  See Indictment, Counts 68, 70, 72, 181-184.  Many other

defendants are also charged with violations of 18 U.S.C. § 924(c): Hakiem Johnson (Count 65),

James Morris and Thais Thompson (Count 67),[3] Alton Coles and Monique Pullins (Count 70),

Alton Coles (68, 70, 72, 181-184) Desmond Faison (Count 17, 20, 73), Terry Walker (Count

179), Adrian McKenzie (Counts 181, 182), Gary Creek (Counts 185, 186) and Antonio Jackson

(Count 185) each are charged with § 924(c) violations for firearms possessed at various points

throughout the conspiracy.

While Coles and most of his co-defendants remain incarcerated in pre-trial

detention, they are not without contacts in the community.  They have numerous acquaintances,

including other members of the Coles Cocaine Gang, who may be willing or tempted to

endeavor to influence a juror.  Even if Coles himself is not inclined to attempt such actions, this

does not preclude the possibility that other members of his Gang may make such attempts

without his participation or knowledge.  In such a case, there is a heightened probability that

jurors may fear retaliation, but for the implementation of an anonymous jury and partial

---

[3]  When federal agents searched Morris's home and car on August 10, 2005, they discovered more than half a million dollars in drug proceeds, a currency counting machine, a loaded firearm, hundreds of rounds of loose ammunition, a scale, and approximately half a kilogram of cocaine.  See Indictment at Count One, Overt Act # 77.

sequestration procedures.

Last, the government notes that in the recent trial of the Latin King defendants, despite the very best efforts of the Court, the U.S. Marshals Service, the litigants, law enforcement, and even the jury itself, there were attempts by at least one defendant to tamper with the jury. That defendant has even acknowledged that he attempted to have communications, and had extremely limited communications with, one juror during that trial. This underscores the need for adequate measures to be employed in this trial to prevent such attempts to thwart justice. Moreover, in the trial of the Courtney Carter drug gang before Judge Dalzell, there were several well-documented efforts to threaten witnesses, both by the defendants themselves as well as their cohorts in the gallery. Judge Dalzell, in fact, also ordered that all members of the public wishing to attend the trial first must leave all cell phones behind[4] as well as present photographic identification and sign in a visitor's log beforehand, noting that there is no right to attend a trial anonymously. The government here asks that the Court, in addition to ordering that the jury remain anonymous and be semi-sequestered in the manner requested, also order that all visitors of the trial leave their cell phones and electronic equipment, including PDAs, behind, present photographic identification, and sign in a visitor's log before entering the courtroom. It is simply not worth the risk of tampering attempts to forbear from employing such reasonable measures.

---

[4] Since most cell phones today come with a camera feature as well as a recording device, it is not uncommon, unfortunately, for associates of large-scale drug gang defendants to photograph pictures of cooperating witnesses and record portions of their testimony in an effort to reveal the witnesses' identities and their testimony to the community in which the witnesses live on a broad scale. Several associates of the Courtney Carter defendants were caught taking pictures of the cooperating witnesses with their cell phones, leading to Judge Dalzell's order forbidding them in court. Also, since there is no right of the public to attend a trial anonymously, Judge Dalzell ordered that visitors of the trial first must present photographic identification and sign a visitor's log, thus limiting the possibility that someone would visit the trial merely to threaten a witness or his family.

II.    **ARGUMENT**

A.    **THE COURT HAS A DUTY TO PROTECT THE JURY FROM THE THREAT OF PHYSICAL INTIMIDATION.**

Many federal courts, including the United States Court of Appeals for the Third Circuit, have long recognized the court's duty to take whatever steps are necessary to protect juries from interference and ensure an impartial verdict.  The Third Circuit in particular has consistently held that a trial court has the discretion to empanel an anonymous jury where there are legitimate concerns as to juror safety, courtroom security and protecting the trial process from outside influences such as extensive media coverage.  See United States v. Scarfo, 850 F.2d 1015, 1023-24 (3d Cir. 1988); United States v. Thornton, 1 F.3d 149, 154 (3d Cir. 1993); United States v. Eufrasio, 935 F.2d 553, 574 (3d Cir. 1991); see also United States v. Stewart, 325 F. Supp.2d 474, 498-99 (D. Del. 2004).

Empaneling an anonymous jury does not infringe on a defendant's right to a fair trial, because "the practice of withholding jurors' names, addresses and places of employment does not deprive the defense of the information it needs to conduct an effective voir dire and exercise its peremptory challenges."  Stewart, 325 F. Supp.2d at 499 (citing Scarfo, 850 F.2d at 1022); see also Eufrasio, 935 F.2d at 574 (analyzing Scarfo).  Any concerns that a jury may have the impression that a defendant is dangerous or guilty can be corrected through "careful instructions to the jurors that keeping their identity confidential [has] no bearing on the evidence or arguments in the case."  Thornton, 1 F.3d at 154.

The Third Circuit first addressed the propriety of using anonymous juries in United States v. Scarfo.  In that case, the defendant was the reputed head of the Philadelphia La Cosa Nostra ("LCN") family, a longstanding racketeering criminal enterprise which was credited with the commission of numerous murders, extortions and other violent criminal activities to

7

facilitate the generation of illegal proceeds which enured to the benefit of the defendant and other members of the enterprise. Scarfo, 850 F.2d at 1017.  At trial, the government intended to present evidence that in an effort to preserve the LCN and the defendant's position, members of the enterprise had killed a prospective witness, had killed a judge and had threatened the lives of several cooperating witnesses.  Id.

Concerned that the evidence to be offered by the government at trial might cause the jurors to suffer anxiety if their names and addresses were revealed, the trial judge in Scarfo empaneled an anonymous jury and utilized the following process:

> During voir dire neither party was permitted to learn the jurors' names, residence, or places of employment.  However, the prospective jurors completed an extensive written questionnaire which delved into such topics as the nature of their employment, the general neighborhood in which they lived, their age, reading habits, television viewing preferences, education, experience as jurors in previous criminal cases, membership in various organizations, hobbies, and connections to law enforcement agencies.  The judge then personally interrogated the prospective jurors, after which he permitted further questioning by counsel.
>
> Before the trial began, the judge told the jurors that they would be selected on an anonymous basis and sequestered. . . . The judge emphasized that anonymity was intended to protect the interests of both the prosecution and the defense.  He explained that the anonymous selection procedure was not to be interpreted as a reflection on the defense, but was being used simply as "a precautionary measure to make sure that both sides get a fair trial."

Id. at 1017-18.  The jurors were similarly instructed again at the close of the case.  Id.

On appeal, the defendant claimed that the anonymous jury procedure utilized by the court violated the presumption of innocence and infringed upon his right to properly exercise peremptory challenges. Id. at 1021.  The Third Circuit disagreed, holding that the trial court's ruling was grounded in "legitimate concerns for juror safety" and supported by respectable legal

8

authority, id. at 1023, and that the court's instructions "were proper in adequately protecting defendant from possible adverse juror inferences." Id. at 1026.

A few years after Scarfo was decided, the Third Circuit in United States v. Eufrasio, 935 F.2d 553 (3d Cir. 1991), reaffirmed the trial court's discretion to permit an anonymous jury "if the court believes there is potential for juror apprehension." Id. at 574. In Eufrasio, which involved charges of racketeering and extortion, the defendants contended on appeal that they had a right to, and been denied, an evidentiary hearing on the issue of "juror safety." The Third Circuit disagreed, holding that so long as the defendants are afforded full voir dire, they are not entitled to an evidentiary hearing as a matter of law." Id. "A trial judge is usually well-aware of the ambiance surrounding a criminal trial and the potential for juror apprehensions." Id. The court did, however, suggest that a trial court ordering the empaneling of an anonymous jury record its findings and reasons on the record. Id.

The principles underlying Scarfo and Eufrasio were reaffirmed in United States v. Thornton, 1 F.3d 149, 154 (3d Cir. 1993). In Thornton, the defendants, alleged to be members of the Junior Black Mafia ("JBM"), were charged with conspiracy to distribute cocaine, crack, and heroin, and related narcotics offenses. Before trial, the district court granted the government's request for an anonymous jury panel on the grounds that the defendants had a history of extreme violence, there had been extensive press coverage surrounding the JBM's activities, and murder charges had been brought in state court against two of the defendants. The government also asserted that members of the JBM had intimidated witnesses on four prior occasions. In granting the government's motion, the trial court found that "sufficient potential for juror apprehension for their own safety exists to justify use of an anonymous jury to ease such tensions.'" Id. at 154. The Court of Appeals affirmed, holding that the district court acted well within its discretion in

9

empaneling an anonymous jury over the defendants' objections.  Id.  The court in Thornton

further noted that "any possible inference of defendants' guilt arising from the use of an

anonymous jury was dispelled by the district court's careful instructions to the jurors that

keeping their identity confidential had no bearing on the evidence or arguments in the case."  Id.

In a district court decision, United States v. Stewart, 325 F. Supp. 2d 474 (D. Del.

2004),  the court rejected the defendant's claim that empaneling an anonymous jury infringed on

his right to a fair trial, where there were legitimate concerns for juror safety, courtroom security

and protecting court proceedings from outside influences.  Id.  The Stewart court reached its

conclusion based on "the seriousness of the [d]efendant's [drug] charges, [the defendant's] past

history of violence, and the evidence of threats made by [d]efendant and his associates against

witnesses."  Id. at 499.

The Second Circuit also has frequently approved the use of anonymous juries to

maintain the integrity of the judicial process and to ensure the safety of the jurors.  Moreover,

that court has repeatedly emphasized that a district court judge has an obligation to take all

necessary steps to obtain those ends.  See United States v. Barnes, 604 F.2d 121, 141 (2d Cir.

1979); United States v. Tutino, 883 F.2d 1125 (2d Cir. 1989); United States v. Persico, 832 F.2d

705 (2d Cir. 1987); United States v. Ferguson, 758 F.2d 843 (2d Cir. 1985); United States v.

Thomas, 757 F.2d 1359 (2d Cir. 1985); United States v. Borelli, 336 F.2d 376, 392 (2d Cir.

1964).  See also United States v. Edmond, 730 F. Supp. 1144, 1145 (D.D.C. 1990) (a court must

balance "the interests of the criminal justice system -- protecting the jurors and their families

from violence, actual or threatened, and shielding the jurors from the potential taint of extensive

pre-trial publicity" with "the defendants' interests -- conducting a meaningful voir dire to permit

the intelligent exercise of their peremptory challenges and retaining their presumption of

10

innocence.").

Under the circumstances of this case,[5] and guided by the above case law, it is quite evident that juror anonymity is necessary to ensure juror safety and courtroom security, and to maintain the integrity of the trial by protecting the court proceedings from outside influences.

### 1.    Evidence At Trial Could Raise Fear Of Intimidation If Names And Addresses Of Jurors Are Known.

The evidence at trial will include a shootout between Coles, his associates, and a rival drug gang in which one individual was shot and left for dead.  In addition, the jury will hear testimony concerning other acts of violence committed over disputes concerning Coles drug gang related reasons.

This kind of evidence could reasonably cause anxiety among the jurors if their names, addresses, and places of employment were made available.  See United States v. Scarfo, 850 F.2d 1015 (3d Cir. 1988).  It is not unlikely that at least some jurors, after hearing evidence of these violent acts, might conclude that they would be in danger should their identities be revealed.  Indeed, the jury could feel constrained to return a verdict based upon their fears, rather than the calm deliberation that all the parties desire, and that the judicial system deserves.[6]

---

[5] It is significant that the government has been notified by George Anastasia, a columnist with the *Philadelphia Inquirer*, that he intends to write several articles about the trial, including a background piece before the trial, as well as several articles during the trial.

[6] As previously indicated, we are not seeking at this time to have the jury fully sequestered.  Rather, as an additional measure to ensure juror anonymity, we request that the jurors be partially sequestered during the trial day – that is, sequestered during lunch and recesses under the protection of the United States Marshal's Service, and transported each trial day to and from an undisclosed central location, from which the jurors may commute to the respective communities.  This procedure is preferable to full sequestration, in that it minimizes the burden on jurors, yet insulates them from intimidation and harassment, and makes them less likely to harbor resentment against the defendants or the government, which will assist in enabling the jury to render a fair and impartial verdict.  See United States v. Persico, 621 F. Supp. 842 (S.D.N.Y. 1985).

**2.      Explicit Statements of Jury Tampering And Disruption Of The Trial Are Not Required to Justify an Anonymous Jury.**

As the Second Circuit stated in United States v. Barnes, the trial judge bears "the responsibility of providing for the protection of the jurors, witnesses, and counsel."  604 F.2d at 137.  An actual threat or incident of jury tampering is by no means required to justify an anonymous jury, Barnes, 604 F.2d at 137.

**B.      JUROR ANONYMITY IS NOT CONTRARY TO THE PRESUMPTION OF INNOCENCE AND WILL HELP TO ENSURE IMPARTIALITY.**

The courts of appeals have long recognized that trial courts have wide discretion in maintaining courtroom security and in protecting the judicial process from external influences. See, e.g., Eufrasio, 935 F.2d at 574; Scarfo, 850 F.2d at 1024.  Thus, the appellate courts have sanctioned the use of metal detectors outside the doors of the courtroom in which a defendant is being tried, United States v. Carter, 815 F.2d 1230, 1231-32 (8th Cir. 1987), and the use of handcuffs and leg irons on inmates in the courtroom, United States v. Amaro, 816 F.2d 284, 285 (7th Cir. 1987).  Arguably, either one of these measures could result in a negative inference on the part of the jury.  The courts have consistently held, however, that this possibility is insufficient to overcome the overriding public interest in ensuring juror safety and safeguarding the integrity of the judicial process.  As the Second Circuit has advised, "protection of jurors is vital to the functioning of the criminal justice system.  As a practical matter, we cannot expect jurors to 'take their chances' on what might happen to them as a result of a guilty verdict." United States v. Thomas, 757 F.2d at 1364.

This Court is well-equipped to reinforce the defendants' right to the presumption of innocence and protect them from any potentially adverse inferences arising out of juror anonymity by providing the jury with an appropriate cautionary instruction.  Scarfo, 850 F.2d at

12

1026-28.[7]

Moreover, although a criminal defendant is constitutionally entitled to a fair and impartial jury, an anonymous jury is entirely consistent with, not antithetical to, impartiality.  In Barnes, after reviewing the allegations of the defendants' history of extreme violence, the particular charges against the defendants, and the general community knowledge of the defendants' past activities, the court stated:

> If a juror feels that he and his family may be subjected to violence or death at the hands of a defendant or his friends, how can his judgement be as free and impartial as the Constitution requires?  If 'the anonymous juror feels less pressure' as the result of anonymity, this is as it should be - a factor contributing to his impartiality.

Barnes, 604 F.2d at 141 (citations omitted); see also Scarfo, 850 F.2d at 1026 ("If . . . anonymity dispels apprehension, it serves the ideal of dispassionate judgment.").[8]

### C.    LIMITING VOIR DIRE WILL NOT DEPRIVE DEFENDANTS OF INFORMATION NEEDED TO EXERCISE THEIR PEREMPTORY CHALLENGES.

In both Scarfo and Barnes, the courts of appeals rejected defense suggestions that public disclosure of the identities of venire members is legally required.  See Scarfo, 850 F.2d at

---

[7]    Should the Court so decide, it may follow the lead of other courts that have instructed the jury that anonymity was required to protect them from media scrutiny rather than for security concerns.  See, e.g., United States v. DeLuca, 137 F.3d 24 (1st Cir. 1998); United States v. Marrero-Ortiz, 160 F.3d 768 (1st Cir. 1998); United States v. Rivera, 51 Fed. Appx. 47 (2d Cir. 2002).  As stated above, it is likely that media attention will be significant in this case.

[8]    In Scarfo, the Third Circuit dismissed as "suspect" the defense's assumption that an anti-defendant bias on the part of the jurors is the only possible, or even the most likely, reaction to anonymity: "Predicting juror responses to the anonymity practice is pure speculation. A juror who fears a defendant's retaliation might be more apt to return a guilty verdict despite such fears rather than because of them."  850 F.2d at 1026 (footnote omitted).  Accordingly, empaneling an anonymous jury protects the interests both of the prosecution and the defendants, the independent interest of the Court in the integrity of the proceedings, and the jury's interest in the safety of its members.

13

1022; Barnes, 604 F.2d at 140.[9]  The law requires only that there be sufficient information elicited at voir dire to permit the intelligent exercise of peremptory and cause challenges.  See Swain v. Alabama, 380 U.S. 202 (1965).  Even though an anonymous jury panel does somewhat limit the permissible areas of inquiry, such a limitation does not constitute a denial of the right to an intelligent exploration of the thoughts and attitudes of potential jurors.  See Scarfo, 850 F.2d at 1022; Barnes, 604 F.2d at 142; Thomas, 757 F.2d at 1364.

In Scarfo, the district court submitted a written questionnaire to the venire encompassing a broad range of personal demographics.  The court and counsel also conducted individual voir dire without inquiring into identities or addresses.  After reviewing the procedures employed by the district court and the precedent established by several Second Circuit decisions, the Third Circuit held that "the legal standards articulated by those courts and our review of the record here convinces us that the defendant was not deprived of information reasonably necessary to the intelligent exercise of his peremptory challenges."  Scarfo, 850 F.2d at 1022.  Indeed, in view of the breadth of the written questionnaire and individual voir dire, the Third Circuit agreed with the district court's conclusion that "counsel were in a much better position to assess the suitability of prospective jurors in this case than in most other trials, criminal or civil."  Scarfo, 850 F.2d at 1022-23.

Moreover, jury selection is designed to be a flexible process.  See Fed. R. Crim. P. 24(a).  As the court in Barnes noted, the law as to jury selection is not so unbending that it cannot, or should not, be accommodated to the realities of modern day trials."  604 F.2d at 142-43.  See also id. & n.10 (discussion balancing the desire to protect jurors, the goal to promote

---

[9]    In fact, because the right to conduct voir dire is not encompassed by the Constitution, limitations affecting peremptory challenges need not be reviewed with the close scrutiny reserved for infringements on the fundamental rights of the accused.  See Scarfo, 850 F.2d at 1021.

efficiency, and the need to safeguard defendants' rights and acquire valid information from the venire).  So long as the court gives counsel full opportunity for an intelligent exercise of challenges by inquiring into the essentials of the case, there is no deprivation of any trial right by ordering an anonymous jury.  See Eufrasio, 935 F.2d at 574; Scarfo, 850 F.2d at 1022.

## CONCLUSION

In this case, the dual purposes of safeguarding the jurors and protecting the integrity of the judicial process can best be achieved through the use of an anonymous jury and by adopting enhanced security procedures that protect the jurors from potential unlawful contact. Further, neither the use of an anonymous jury nor the enhanced security procedures will infringe on the defendant's rights in any way.

For all the foregoing reasons, the government respectfully requests that the Court grant its Motion For An Anonymous Jury and Heightened Juror Security.

Respectfully submitted,

PATRICK L. MEEHAN
United States Attorney
Eastern District of Pennsylvania


/s/ Richard A. Lloret
RICHARD A. LLORET
Assistant United States Attorney


/s/ Michael J. Bresnick
MICHAEL J. BRESNICK
Assistant United States Attorney

15

## <u>CERTIFICATE OF SERVICE</u>

Michael J. Bresnick, Assistant United States Attorney, hereby certifies that a true

and correct copy of the within Government's Motion for an Anonymous Jury Panel and

Heightened Jury Security has been served by me this date, by first class mail, upon the

following:

**SEE ATTACHED LIST**

/s/ Michael J. Bresnick
MICHAEL J. BRESNICK
Assistant United States Attorney

## SERVICE LIST

Christopher D. Warren
1500 Walnut Avenue
Suite 1500
Philadelphia, PA 19102
Ph: (215) 546-3750
Fax: (215) 546-8779
email: Christopherduffwarren@hotmail.com
   Counsel for Alton Coles (1)

Jack McMahon
1500 Walnut Street
Suite 900
Philadelphia, PA 19102
Fax: (215) 985-4416
Phone: (215) 985-4443
Email: mcmahonlaw.@hotmail.com
   Counsel for Timothy Baukman (8)

Laurence Harmelin
300 N. Pottstown Pike
Suite 210
Exton, PA 19341
Tel: (610) 363-3888
Fax: (610) 696-2226
   Counsel for Monique Pullins (12)

Ronald B. Thompson, Esq.
3002 Lincoln Drive, Suite J
Marlton, NJ 08053
Phone: (856) 797-5785
Fax: (856) 797-5786
Fax: (856) 597-4200
Email: ronaldbthompson@lawyer.com
   Co-Counsel for James Morris (13)

Wayne Powell, Esq.
811 Church Road
101 Tarragon Building
Cherry Hill, NJ 08002
Phone: (856) 488-0004
Fax: (856) 486-7244
   Co-Counsel for James Morris (13)

Thomas Egan, III
621 Swede Street
Norristown, PA 19401
Phone: (610) 277-4868
Fax: 277-5823
Email: Tom101861@aol.com
   Counsel for Asya Richardson (18)

Paul J. Hetznecker, Esq.
Hetznecker & Meehan
1420 Walnut Street, Suite 911
Philadelphia, PA 19102
Phone: 215-893-9640
Fax: 215-893-0255
   Counsel for Thais Y. Thompson (22)

17