UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 05-440 |
| TIMOTHY BAUKMAN | : | |

**SURRICK, J.**                                                                          **DECEMBER 12, 2007**
<u>**MEMORANDUM & ORDER**</u>

Presently before the Court is Defendant Timothy Baukman's Motion to Suppress (Doc. No. 461). A Suppression Hearing was held on August 17, 2007. For the following reasons, Defendant's Motion will be denied.

**I.  BACKGROUND**

On February 21, 2007, the grand jury returned a 194-count fifth superseding indictment ("indictment") against Alton Coles and twenty-one co-defendants, including Defendant Timothy Baukman. Count One of the indictment charged nineteen individuals, including the Defendant, who was named as a principal manager of the drug conspiracy, with conspiracy to distribute at least 1,200 kilograms of cocaine and 600 kilograms of cocaine base ("crack") in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A). Count Two charged Baukman and Coles with managing the conspiracy and committing criminal activity in violation of 21 U.S.C. § 848(a), (b). The remaining counts pertained to other criminal activities involving drugs and firearms.

In furtherance of the investigation of the drug activities of Coles and his co-conspirators, the Government submitted on May 19, 2005 an initial application for authorization of a wiretap of Coles' cellular phone. The Honorable Eduardo C. Robreno, United States District Judge for the Eastern District of Pennsylvania, authorized the wiretap on May 19, 2005. As a result of the

wiretap, physical surveillance, and working with confidential sources, Special Agent Anthony M. Tropea of the Bureau of Alcohol, Tobacco and Firearms ("ATF") submitted a one hundred and twenty-seven page affidavit requesting search warrants for various properties. The affidavit detailed the year-long investigation of the federal authorities, provided information from four confidential sources, and detailed the surveillance and corroboration efforts of the agents. (*See* Search Warrant Aff.)[1] On August 5, 2005, the Honorable Thomas J. Rueter, United States Magistrate Judge for the Eastern District of Pennsylvania, issued a warrant authorizing the agents to search various properties, including an apartment for which Defendant Baukman paid rent at 339 East Essex Avenue in Lansdowne, Pennsylvania. (*See* Search Warrant Aff. ¶ 15(m).)

On August 10, 2005, ATF agents conducted a search of 339 East Essex Avenue. (Doc No. 490 at 5.) The search yielded substantial evidence of the conspiracy to distribute cocaine and crack, including, but not limited to, ten firearms, a hydraulic press to form cocaine powder

---

[1] Special Agent Tropea discusses the basis for the facts contained in the affidavit as follows:

> The statements contained in this affidavit are based on my observations and those of my fellow agents and detectives and police officers working with me; pen registers relating to the residence telephones and cellular phones of some of the targets of this investigation, subscriber records provided by Nextel, Verizon, Sprint, Cingular Wireless and other telephone providers, information that I have obtained from confidential informants, consensually recorded telephone conversations, controlled undercover purchases of crack cocaine, historical arrests and seizures made by state and local law enforcement, the execution of federal search warrants, the non-consensual monitoring of telephone conversations, and my experience and background as an ATF agent. Because this affidavit is being submitted for the purpose of obtaining authorization to search the locations and automobiles identified below, I have not included every fact known to me concerning this investigation. I have set forth facts that I believe establish probable cause to search.

(Search Warrant Aff. ¶ 2.)

into "bricks" of kilogram quantities for sale, approximately 459 grams of cocaine and 7 grams of crack, "tally sheets" of drug payments, as well as various items of drug paraphernalia. (*Id*. at 7–8.) Defendant seeks to suppress this evidence on the grounds that the search violated his Fourth Amendment rights. (Doc. No. 461 ¶¶ 6, 7.)

## II. DISCUSSION

Defendant contends that the evidence seized during the search of 339 East Essex Avenue should be suppressed because the magistrate judge lacked a substantial basis for concluding that probable cause existed based upon the search warrant affidavit. (*See* Doc. No. 461 ¶ 3.) Defendant originally raised additional challenges to the search warrant affidavit and the execution of the search warrant but withdrew these challenges at the August 17, 2007 Suppression Hearing. (*See id.* ¶¶ 4–14; *see also* Hr'g Tr. 9/17/07 at 41.)

In support of his argument that the search warrant affidavit lacked probable cause, Defendant asserts that (1) the affidavit lacked reliable evidence from confidential sources (Hr'g Tr. 9/17/07 at 9) and (2) the Government failed to establish a nexus between the alleged criminal activity and the Defendant's property (*id.* at 10). One need only read the search warrant affidavit to conclude that Defendant's arguments are completely devoid of merit.

### A. Information from Confidential Sources

Defendant asserts that the Government failed to establish probable cause in the affidavit because it relied upon the uncorroborated, conclusory statements of confidential sources. (Hr'g Tr. 9/17/07 at 9–10.) Defendant contends that the confidential sources made statements about Defendant without providing any factual bases for their statements or knowledge. (*Id*. at 10.) As an example, Defendant suggests that there is no factual basis in the affidavit for CS-1's

statement that Defendant sells and delivers cocaine. (*Id*. at 19.) Defendant also argues that the information from the confidential sources was not corroborated through monitoring of phone calls or physical surveillance. (*Id*. at 10, 12.) The Government responds that the information provided by the confidential informants was extensively corroborated, as detailed in the affidavit. (*Id*. at 12, 13.) The Government is correct.

When reviewing whether a search warrant was based on probable cause, we adopt a deferential standard. *United States v. Ritter*, 416 F.3d 256, 264 (3d Cir. 2005). In assessing whether probable cause exists to support the issuance of a search warrant, the magistrate must do a "totality-of-the-circumstances analysis" and must make a "practical, common-sense decision." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). That decision should be based on "all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information." *Id.* (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)).

The District Court, in reviewing the magistrate's decision, must "simply . . . ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Id.* at 238-39 (quoting *Jones*, 362 U.S. at 271); *see also United States v. Williams*, 124 F.3d 411, 420 (3d Cir. 1997). A "substantial basis" is said to exist where, "given all the circumstances set forth in the affidavit before [the issuing judge] . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238.

In order to determine whether probable cause exists, the magistrate cannot merely "ratif[y] the bare conclusions of others." *Gates*, 462 U.S. at 239. When relying on statements made by an unnamed source, the affiant must do more than attest to having received "reliable

4

information from a credible person." *Id.* The corroboration of a source's statements by independent investigation provides substantial support for the finding of probable cause. As the *Gates* court indicates: "Our decisions applying the totality-of-the-circumstances analysis . . . have consistently recognized the value of corroboration of details of an informant's tip by independent police work." *Id.* at 241. The *Gates* court, citing a number of cases, concluded that "it is enough, for purposes of assessing probable cause, that 'corroboration through other sources of information reduced the chances of a reckless or prevaricating tale,' thus providing 'a substantial basis for crediting the hearsay.'" *Id.* at 244-45 (quoting *Jones*, 362 U.S. at 269, 271).

In this case, it is clear that the confidential sources had personal knowledge of the Defendant's criminal activities through interactions in furtherance of the drug operation. The investigators independently verified much of the information provided by the confidential sources. For example, CS-1 provided investigators with the Defendant's cellular phone number. (Search Warrant Aff. ¶ 17.) The special agents confirmed that the number is subscribed to by "Tauheed Baukman," the name of the Defendant's nine-year old son. (*Id.* ¶ 17 n.11.) By comparing a Pennsylvania driver's license photograph of Tauheed Baukman with a known police photograph of Timothy Baukman, the investigators determined that "Tauheed BAUKMAN is an alias used by Timothy BAUKMAN, and that in fact the two are one and the same person." (*Id.* ¶ 52.) The agents also confirmed that Timothy Baukman opened a bank account in his son's name at Wachovia Bank, and that between 2001 and 2004 more than $150,000 was deposited into the account. (*Id.* ¶ 21.) During that same period, IRS records reveal that no tax returns were filed by Timothy or Tauheed Baukman. (*Id.*) Moreover, financial records reveal that Baukman pays the rent for 339 East Essex Avenue and for an apartment

where he lives with his girlfriend out of the bank account in his son's name. (*Id.* ¶ 84.) CS-2 is an ATF registered confidential informant who has provided reliable information with regard to the Alton Coles drug organization. CS-2 positively identified a photograph of Timothy Baukman as a person who distributed cocaine and crack cocaine for Coles in Philadelphia and Delaware Counties. (*Id* ¶ 28.) CS-4 described Defendant's car to the investigators, including the license plate number (*id.* ¶ 79), information that was corroborated by the investigators (*id*. ¶ 84).

The affidavit establishes the confidential informants as reliable sources of information by corroborating a substantial amount of the information provided by them concerning Defendant Baukman and his co-defendants. (*See, e.g., id*. ¶¶ 19–27, 30–40, 80.) Taken together, the corroborated details demonstrate that the Government was not basing its showing of probable cause upon unreliable informants. The special agents cultivated relationships with their confidential sources through continuous interviews and contact. Also, the agents did not rest upon the statements of the confidential sources, but independently investigated the information received. We are satisfied that the Government did not offer merely conclusory statements by the informants. Rather, the affidavit amply demonstrates that the confidential sources were in positions to relay information gathered from personal interactions with, or observations of, the Defendant and his co-defendants. Magistrate Judge Rueter concluded that the information from the confidential sources was reliable. The affidavit fully supports this conclusion.

      **B.**      **Nexus Between Criminal Activity and Defendant's Property**

Defendant also argues that the search warrant affidavit fails to connect illegal drug or other criminal activity to the property that he rented at 339 East Essex Avenue. (Hr'g Tr.

6

9/17/07 at 10.)  Defendant argues that there is no evidence of drugs going into or out of the property.  (*Id*. at 10, 12, 25.)  Defendant asserts that the Government has not shown that the property referred to by the Defendant and others as the "southwest crib" is the 339 East Essex Avenue property.  (Hr'g Tr. 9/17/07 at 9, 10, 24.)  Defendant's argument appears to be that even if the Government established probable cause to search the "southwest crib," it did not have probable cause to search 339 East Essex Avenue.  Defendant points out that the 339 East Essex Avenue property is in Lansdowne, Delaware County, not Southwest Philadelphia.  (*Id.* at 9, 23.)  Defendant also relies upon a paragraph in the search warrant affidavit describing a telephone conversation in which Alton Coles stated that he was going to the southwest crib.  (*Id*. at 10, 24; *see also* Search Warrant Aff. ¶ 122.)  The investigators went to 339 East Essex Avenue and observed other defendants arriving, but not Coles.  The Defendant submits that this is proof that the Government incorrectly identified Essex Avenue as the "southwest crib".

We are satisfied that the affidavit supports the conclusion that 339 East Essex Avenue was a stash house for Defendant's illegal drug activity.  The special agents conducted extensive surveillance, both electronic and physical, to determine the locations of the stash houses used in this drug conspiracy.  Lansdowne is southwest of Philadelphia and southwest of Defendant's residence, which is in the East Falls section of Philadelphia.  (*See* Search Warrant Aff. ¶ 84.)  Moreover, Coles' failure to show at the Lansdowne property is not determinative of anything.  (*See id*. ¶ 83.)  Based upon the totality of the Affidavit, Magistrate Judge Rueter's conclusion that 339 East Essex Avenue was the stash house referred to by the co-conspirators, was perfectly reasonable.

Likewise, we are satisfied that, based on the affidavit, Magistrate Judge Reuter had a

7

substantial basis for concluding that there was a fair probability that contraband or evidence of a crime would be found at 339 East Essex Avenue. *See Jones*, 362 U.S. at 271; *Gates* 462 U.S. at 238. The affidavit explained that there was a large number of properties and cars involved in this conspiracy. (Search Warrant Aff. ¶ 9.) The special agent who authored the affidavit asserted that based upon his knowledge, experience, and training, drug equipment, contraband, weapons, and non-contraband evidence would be found at the residences and stash houses connected to the co-conspirators. (*Id*. ¶¶ 10, 11, 155.) The affidavit identified Defendant as a major figure in the drug operation, as well as the front business, Take Down Ltd. (*Id*. ¶ 13(1)(b).) The affidavit explained that it is common for participants in large drug conspiracies to lease apartments for the purpose of storing drugs, firearms, cash proceeds, and drug-related records. (*Id*. ¶ 14.) The affidavit indicates that the Defendant paid the rent for 339 East Essex Avenue, Apartment B, but did not live there. (*Id*. ¶¶ 15(m), 117 n.68.) The affidavit concluded that, based upon wiretap interceptions and physical surveillance, the Lansdowne property was an important stash house in the drug operation. (*Id*. ¶ 113.) Finally, the affidavit described another intercepted call in which Coles instructed co-defendant Dante Tucker, through coded language, to prepare drugs for another co-defendant, Hakiem Johnson. (*Id*. ¶ 122.) The investigators went to 339 East Essex Avenue to conduct physical surveillance. The investigators observed Tucker going inside. Johnson then arrived in his car and walked inside. Soon after, Johnson left the building carrying a brown bag and drove away. Tucker then left the area in his car as well. The affidavit explained that "this sequence of events is consistent with the use of 339 East Essex Avenue as a stash location." (*Id.*)

The totality of the evidence clearly created a substantial basis for a finding of probable

cause and was more than sufficient for the issuance of a warrant to search the apartment at 339 East Essex Avenue.[2] Accordingly, we are compelled to reject Defendant's argument that the evidence should be suppressed for lack of probable cause.

    An appropriate Order follows.

---

[2] Since we conclude that there was probable cause for the issuance of the search warrant, there is no need to discuss the Government's argument with regard to the good-faith exception. (Hr'g Tr. 9/17/07 at 17–18.)

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 05-440 |
| TIMOTHY BAUKMAN | : | |

### **ORDER**

AND NOW, this <u>12th</u> day of December, 2007, upon consideration of Defendant Timothy Baukman's Motion to Suppress (Doc. No. 461), and all documents submitted in support thereof and in opposition thereto, it is ORDERED that the Motion is DENIED.

IT IS SO ORDERED.

BY THE COURT:

_____
R. Barclay Surrick, Judge