## MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT
## SENTENCE BY A PERSON IN FEDERAL CUSTODY

| United States District Court | District E.D. Pennsylvania | |
|---|---|---|
| Name (under which you were convicted): Timothy Baukman | | Docket or Case No.: 05-440 |
| Place of Confinement: Federal Medical Center P.O. Box 879 Ayer, Ma 01432 | | Prisoner No.: 60388-066 |
| UNITED STATES OF AMERICA | | Movant (include name under which you were convicted) |
| v. | | Timothy Baukman |

### MOTION

1.  (a) Name and location of court that entered the judgment of conviction you are challenging:

    United States District Court for The Eastern District of Pennsylvania

    (b) Criminal docket or case number (if you know): 05-440

2.  (a) Date of the judgment of conviction (if you know): 11/2/2010

    (b) Date of sentencing: 11/2/2010

3.  Length of sentence: 360 Months

4.  Nature of crime (all counts):

    Conspiracy offense (Count 1), CCE offense (Count 2), maintaining a storage facility, 21 U.S.C. § 856(a)(2) (Count 61), possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841 (a)(1) (Count 62); two counts of possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(Counts 63, 68); 31 counts of money laundering 18 U.S.C. § 1956(a)(1)(A)(I) ("promotion" money laundering) (Counts 89-120); and 54 counts of money laundering, 18 U.S.C. § 1956(a)(1)(B)(I).

5.  (a) What was your plea? (Check one)

    (1) Not guilty ☑    (2) Guilty ☐    (3) Nolo contendere (no contest) ☐

    (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, what did you plead guilty to and what did you plead not guilty to?

6.  If you went to trial, what kind of trial did you have? (Check one)    Jury ☑    Judge only ☐

7. Did you testify at a pretrial hearing, trial, or post-trial hearing?    Yes ☐    No ☑

8. Did you appeal from the judgment of conviction?    Yes ☑    No ☐

9. If you did appeal, answer the following:

(a) Name of court:  Third Circuit Court of Appeals

(b) Docket or case number (if you know):  10-4373

(c) Result:  Affirmed

(d) Date of result (if you know):  1/16/2014

(e) Citation to the case (if you know):  U.S. v. Baukman, 558 Fed. Appx. 173 (3rd Cir. 2014)

(f) Grounds raised:

The Court erred in denying the Rule 29 Motion on the CCE Count. The Court erred in denying the Rule 29 Motion on the 924(c) Count. The Court erred in denying the Rule 29 Motion on the Money Laundering Count. The Evidence was insufficient to convict on the 21 USC 856 count. The Evidence was insufficient to convict on the 21 USC 846 Count. The drug quantity attributed to Baukman was not submitted to the jury, violating Apprendi.

(g) Did you file a petition for certiorari in the United States Supreme Court?    Yes ☑  No ☐

If "Yes," answer the following:

(1) Docket or case number (if you know):  13-10588

(2) Result:

Writ Cert Denied

(3) Date of result (if you know):  10/6/2014

(4) Citation to the case (if you know):  Baukman v. United States, 2014 U.S. LEXIS 6727 (U.S

(5) Grounds raised:

Did the Third Circuit violate Petitioner's Sixth Amendment Right. Did the Third Circuit violate Petitioner's Due Process rights. Was Baukman's Sixth Amendment right to counsel violated. Does a conflict exists between the Circuits in defining CCE elements of "occupying a position of organizer, supervisor or any other position of management."

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications concerning this judgment of conviction in any court?

Yes ☐  No ☑

11. If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court:

(2) Docket or case number (if you know):

(3) Date of filing (if you know):

(4) Nature of the proceeding:

(5) Grounds raised:

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?    Yes ❑  No ❑

(7) Result:

(8) Date of result (if you know):

(b) If you filed any second motion, petition, or application, give the same information:

(1) Name of court:

(2) Docket or case number (if you know):

(3) Date of filing (if you know):

(4) Nature of the proceeding:

(5) Grounds raised:

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?    Yes ❑   No ❑

(7) Result:

(8) Date of result (if you know):

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

(1)  First petition:    Yes ❑   No ❑

(2)  Second petition:   Yes ❑   No ❑

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the <u>facts</u> supporting each ground.

**GROUND ONE:**

Sixth Amendment Violation - Ineffective Assistance of Counsel.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Counsel rendered ineffective assistance when he failed to advise Baukman of the application of the Federal Sentencing Guidelines even in the most basic terms. (See Memorandum of Law)

(b) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ❑  No ☑

(2) If you did not raise this issue in your direct appeal, explain why:

Ineffective of Counsel Claims are to be raised for the first time in a Title 28 USC 2255.

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ❑  No ☑

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion, petition, or application?

   Yes ❏   No ❏

(4) Did you appeal from the denial of your motion, petition, or application?

   Yes ❏   No ❏

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

   Yes ❏   No ❏

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND TWO:**

Sixth Amendment Violation - Ineffective Assistance of Counsel.

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

Counsel rendered ineffective assistance when he filed a motion to suppress without familiarizing himself with the facts of the warrant.  (See Memorandum of Law)

(b) **Direct Appeal of Ground Two:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ❑   No ☑

    (2) If you did not raise this issue in your direct appeal, explain why:

    Ineffective of Counsel Claims are to be raised for the first time in a Title 28 USC 2255.

(c) **Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ❑   No ☑

    (2) If your answer to Question (c)(1) is "Yes," state:

    Type of motion or petition:

    Name and location of the court where the motion or petition was filed:

    Docket or case number (if you know):

    Date of the court's decision:

    Result (attach a copy of the court's opinion or order, if available):

    (3) Did you receive a hearing on your motion, petition, or application?

        Yes ❑   No ❑

    (4) Did you appeal from the denial of your motion, petition, or application?

        Yes ❑   No ❑

    (5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

        Yes ❑   No ❑

    (6) If your answer to Question (c)(4) is "Yes," state:

    Name and location of the court where the appeal was filed:

    Docket or case number (if you know):

    Date of the court's decision:

    Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

## GROUND THREE:

Sixth Amendment Violation - Ineffective Assistance of Counsel.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Counsel rendered ineffective assistance when he failed to realize that the introduction of the "Menace" movie was required for the defense of the case since Baukman was the Director/Producer of the movie. (See Memorandum of Law)

(b) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ❑    No ☑

(2) If you did not raise this issue in your direct appeal, explain why:

Ineffective of Counsel Claims are to be raised for the first time in a Title 28 USC 2255.

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ❑    No ☑

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion, petition, or application?

Yes ❏   No ❏

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ❏   No ❏

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

Yes ❏   No ❏

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND FOUR:**

Sixth Amendment Violation - Ineffective Assistance of Counsel.

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

Counsel rendered ineffective assistance by failing to prepare a memorandum to the court in preparation for jury charge clarifying the CCE overt act requiring a continuing series of violations requiring a unanimous verdict.   (See Memorandum of Law)

(b) **Direct Appeal of Ground Four:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ❑ No ☑

    (2) If you did not raise this issue in your direct appeal, explain why:

    Ineffective of Counsel Claims are to be raised for the first time in a Title 28 USC 2255.

(c) **Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ❑ No ☑

    (2) If your answer to Question (c)(1) is "Yes," state:

    Type of motion or petition:

    Name and location of the court where the motion or petition was filed:

    Docket or case number (if you know):

    Date of the court's decision:

    Result (attach a copy of the court's opinion or order, if available):

    (3) Did you receive a hearing on your motion, petition, or application?

        Yes ❑    No ❑

    (4) Did you appeal from the denial of your motion, petition, or application?

        Yes ❑    No ❑

    (5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

        Yes ❑    No ❑

    (6) If your answer to Question (c)(4) is "Yes," state:

    Name and location of the court where the appeal was filed:

    Docket or case number (if you know):

    Date of the court's decision:

    Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

13. Is there any ground in this motion that you have <u>not</u> previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

All issues raised herein are based on Sixth Amendment violation due to ineffective assistance of counsel and raised for the first time in this Title 28 USC 2255.

14. Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the judgment you are challenging?      Yes ❏   No ☑

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing:

Jack McMahon, 1500 Walnut Street, Suite 900, Philadelphia, PA 19102

(b) At arraignment and plea:

Jack McMahon, 1500 Walnut Street, Suite 900, Philadelphia, PA 19102

(c) At trial:

Jack McMahon, 1500 Walnut Street, Suite 900, Philadelphia, PA 19102

(d) At sentencing:

Jack McMahon, 1500 Walnut Street, Suite 900, Philadelphia, PA 19102

(e) On appeal:

Stephen Britt, PO Box 1746, Blue Bell, PA 19422

(f) In any post-conviction proceeding:

John J. Griffin, 239 S. Camac Street, Philadelphia, PA 19107

(g) On appeal from any ruling against you in a post-conviction proceeding:

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?     Yes ☑ No ❑

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?     Yes ❑ No ☑

(a)  If so, give name and location of court that imposed the other sentence you will serve in the future:

(b) Give the date the other sentence was imposed:

(c) Give the length of the other sentence:

(d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?     Yes ❑  No ❑

Page 13

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

Petition is timely under the Anti-Terrorism and Effective Death Penalty Act of 1996.

---

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of —
    (1) the date on which the judgment of conviction became final;
    (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;
    (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
    (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Therefore, movant asks that the Court grant the following relief:

Vacate the Conviction and Sentece and/or Grant an Evidentiary Hearing

or any other relief to which movant may be entitled.

_____JG1063_____

Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on (month, date, year).

Executed (signed) on _____10/5/2015_____ (date).

_____

Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion.

Represented by Counsel.

**GROUND FIVE:**

Sixth Amendment Violation - Ineffective Assistance of Counsel.

**(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):**

Counsel was ineffective when he failed to advise the court that Baukman was not present during the point when the jury note was addressed.

**(b) Direct Appeal of Ground Four:**

**(1) If you appealed from the judgment of conviction, did you raise this issue?**

    ____ Yes  <u>X</u> No "

**(2) If you did not raise this issue in your direct appeal, explain why:**

    Ineffective of Counsel Claims are to be raised for the first time in a Title 28 USC 2255.

**(c) Post-Conviction Proceedings:**

**(1) Did you raise this issue in any post-conviction motion, petition, or application?**

    ____ Yes  <u>X</u> No

**GROUND SIX:**

Sixth Amendment Violation - Ineffective Assistance of Counsel.

**(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):**

Appellate counsel rendered ineffective assistance when he failed to raise on appeal that the court had erred in the jury charge by failing to clarify that the CCE overt act required a continuing series of violations be found by a unanimous verdict.

**(b) Direct Appeal of Ground Four:**

**(1) If you appealed from the judgment of conviction, did you raise this issue?**

_____ Yes  <u>X</u> No "

**(2) If you did not raise this issue in your direct appeal, explain why:**

Ineffective of Counsel Claims are to be raised for the first time in a Title 28 USC 2255.

**(c) Post-Conviction Proceedings:**

**(1) Did you raise this issue in any post-conviction motion, petition, or application?**

_____ Yes  <u>X</u> No

**GROUND SEVEN:**

Sixth Amendment Violation - Ineffective Assistance of Counsel.

**(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):**

Appellate counsel was ineffective when he failed to raise on appeal whether the court erred in not allowing the jury to determine drug quantity in light of the Supreme Court's decision in Alleyne.

**(b) Direct Appeal of Ground Four:**

**(1) If you appealed from the judgment of conviction, did you raise this issue?**

  ___ Yes  <u>X</u> No "

**(2) If you did not raise this issue in your direct appeal, explain why:**

  Ineffective of Counsel Claims are to be raised for the first time in a Title 28 USC 2255.

**(c) Post-Conviction Proceedings:**

**(1) Did you raise this issue in any post-conviction motion, petition, or application?**

  ___ Yes  <u>X</u> No

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TIMOTHY BAUKMAN

Petitioner,

vs.                                                    Criminal Docket No.: 05-440

UNITED STATES OF AMERICA

Respondent.

---

PETITIONER'S MEMORANDUM OF LAW AND SUPPORTING APPENDIX IN SUPPORT
OF MOTION TO CORRECT VACATE, AND/OR SET-ASIDE SENTENCE AND
CONVICTION PURSUANT TO TITLE 28 U.S.C. § 2255

COMES NOW Timothy Baukman (hereinafter "Baukman") by and through undersigned

counsel with this his Memorandum of Law and Supporting Exhibits in support of Motion to Set

Aside Conviction and Sentence pursuant to Title 28 U.S.C. § 2255 and in support provides as

follows:

SUMMARY OF THE PROCEDURAL HISTORY

1.    On February 21, 2007, a grand jury in the Eastern District of Pennsylvania returned a

Fifth Superseding Indictment, charging Timothy Baukman, Alton Coles and James Morris and

19 others with a variety of federal offenses.

2.    Count 1 charged all three defendants and numerous others with a conspiracy to

distribute, and possess with intent to distribute, five kilograms or more of cocaine and 50 grams

or more of cocaine base ("crack"), in violation of 21 U.S.C. § 846. Count 2 charged Coles and

Baukman with engaging in a continuing criminal enterprise ("CCE"), in violation of 21 U.S.C. §

848(a), which was predicated on the acts set forth in Count 1. Baukman and Coles were charged

with a variety of other drug trafficking, firearms, and money laundering offenses. Morris was

charged with several counts of using a telephone to facilitate drug trafficking activity and with one count of possessing a firearm in furtherance of drug trafficking activity.

3.  The indictment alleged that Coles was the organizer and leader of the organization, Baukman was the principal manager and Morris supplied multi-kilogram quantities of cocaine that he obtained from outside sources. The indictment further alleged that Baukman and Coles used firearms to protect the operation and its assets, including the firearms found in their residences during searches in August 2005.

4.  Bauman pled not guilty and proceeded to trial.

5.  On March 5, 2005, after a seven-week trial, the jury returned a guilty verdict against Baukman who was convicted of the conspiracy offense (Count 1), the CCE offense (Count 2), one count of maintaining a storage facility, in violation of 21 U.S.C. § 856(a)(2) (Count 61), one count of possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (Count 62); two counts of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Counts 63, 68); 31 counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(I) ("promotion" money laundering) (Counts 89-120); and 54 counts of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(I)("concealment" money laundering) (Counts 121-175). D.E. # 1347.

6.  The district court subsequently granted Baukman's motion to dismiss the second Section 924(c) count (Count 68) as multiplicitous. D.E. # 1348.

7.  Baukman moved for a judgment of acquittal at the close of the government's case. The District court reserved ruling on the motions, D.E. # 70, and Baukman also filed a *pro-se* Rule 29 motion.

8. The motions filed by trial counsel were denied, however the *pro-se* Rule 29 motion was not addressed by the Court. D.E. # 1312

9. On November 2, 2010, the court sentenced Baukman to a total of 360 months' imprisonment, consisting of 240 months for the CCE offense, 60 months on the majority of his other counts of conviction, which were run concurrently to each other but consecutively to the 240 months for the CCE count, and a consecutive 60-month term for the Section 924(c) conviction. D.E. # 1347. The court also imposed a 10-year period of supervised release and a special assessment of $ 9,100.

10. On November 15, 2010 Baukman filed a timely Notice of Appeal. (D.E. # 1358).

11. On January 16, 2014 the Third Circuit Court of Appeals affirmed Baukman's sentence and conviction. See, *United States v. Baukman*, 558 Fed. Appx. 173 (3rd Cir. 2014).

11. Baukman proceeded to the United States Supreme Court, however, the request for a writ of certiorari was denied on October 6, 2014. *See, Baukman v. United States*, 2014 U.S. LEXIS 6727 (U.S., Oct. 6, 2014).

12. This Title 28 U.S.C. § 2255 Motion to Vacate Conviction and Sentence is timely before this Honorable Court.

## STATEMENT AS TO WAIVER, CAUSE AND PREJUDICE

Baukman did not raise these claims on direct appeal because the facts set forth in his § 2255 were and are material to the claim of ineffective assistance of counsel, but were not part of the record for direct appeal. "Cause" is therefore established for his failure to raise the claim prior to this motion. *Ciak v. United States*, 59 F.3d 296, 303-304 (2nd Cir. 1995); *Bond v. United States*, 1 F.3d 631 (7th Cir. 1994); *Stoia v. United States*, 22 F.3d 766 (7th Cir. 1994) (prisoner's failure to raise ineffective assistance of counsel claim on direct appeal will result in forfeiture of

right to bring § 2255 motion only when claim is based entirely on trial record); *English v. United States*, 42 F.3d 473, 481 (9th Cir. 1994)(holding that section 2255 claims are waived for failure to raise them on direct appeal only if (1) a specific procedural rule required the defendant to raise the issues on direct appeal or (2) the failure to raise the issues was a deliberate bypass of direct review). Even if the record on appeal is subsequently determined to have been sufficient to have raised the instant claims of ineffective assistance of counsel, cause exists for the failure of Mr. Baukman to raise the claims prior to this motion because it reasonably appeared at the time of filing the appeal that new evidence might be necessary to support his claim.

Cause exists for the failure of Baukman to raise the instant claims of ineffective assistance of counsel in his direct appeal because such claims should not be brought in direct appeal even if the record is or was sufficient to raise the claims. *United States v. Hardamon*, 188 F.3d 843 (7th Cir. 1999); *United States v. Galloway,* 56 F.3d 1239, 1240-43 (10th Cir. 1995) (en banc); *United States v. Tunstall,* 17 F.3d 245, 246 [4] (8th Cir. 1994).

Baukman has properly pleaded "prejudice" by pleading the "fundamental defect" in his sentence, as set forth herein. *Ward v. United States*, 995 F.2d 1317, 1321 (6th Cir. 1993). "Prejudice" to Mr. Baukman, within the meaning of *United States v. Frady*, 456 U.S. 152, (1982), as construed in case law such as *United States v. De La Fuente*, 8 F.3d 1333, 1336-37 (9th Cir. 1993) is established by the fact that absent relief by this Court, Mr. Baukman's sentence is in violation of the Constitution and laws of the United States. *Id.* See also *Isabel v. United States,* 980 F.2d 60, 64 (1st Cir. 1992)("prejudice" established, for purpose of "procedural bypass question" where § 2255 movant's "sentencing range would be reduced" if successful on claim).

Based on the foregoing, and the absence of any knowing and intelligent waiver by Mr. Baukman of his right to bring this motion, this Court is not precluded by the "cause and prejudice" principle from entertaining, ruling on the merits, and granting the relief requested.

## STATEMENT OF THE FACTS

Baukman, Coles and Morris along with other co-Defendants allegedly participated in a cocaine and crack conspiracy between 1998 through 2005 referred to as the "Coles Cocaine Gang" or the "CCG." It was presented that Morris negotiated and arranged deliveries of bulk cocaine for the CCG and was entrusted with hundreds of thousands of dollars and cash generated by the conspiracy that was allegedly used to buy bulk cocaine. Coles was the leader of the organization and Baukman his alleged assistant. Johnson and Tucker acted as mid-level managers who performed a variety of functions within the organization.

### A. The evidence against Timothy Baukman

The evidence presented against Baukman at trial was minimal at best. According to the government Baukman leased and managed an apartment that was used as the organization's cocaine processing plant, and that allegedly Baukman supervised subordinate workers in the organization. Multiple phone calls were intercepted between Coles and Baukman which according to the Government the conversations supported a drug conspiracy and supposedly solidified Baukman's role in the organization.

According to cooperating witness Charlton Custis' testimony, he managed a corner operation on Cecil Street for the organization. Custis testified he began selling drugs supplied by Coles in 1997 or 1998. After several years, Custis began to get drugs directly from Hakiem Johnson who was Coles' uncle. Sometime in 2000 Custis left the area and resumed in 2002 to continue selling crack on Cecil Street. Although it was undetermined when Custis obtained

drugs from Baukman, he testified it was on several occasions. Brown, a co-conspirator, told Custis that he obtained cocaine directly from Baukman as well.

Sometime in 2004, Custis received approximately 4.5 ounces of crack directly from Baukman when Coles was unable to meet with Custis. When Custis sold the crack, he called Baukman for more. Allegedly, Baukman arranged to have Johnson pick up the cash from the last transaction and deliver more drugs to Custis. None of this testimony has been corroborated.

Kristina Latney, Coles' longtime friend testified regarding Baukman's alleged involvement in the Coles operation. Latney met Baukman late in 1997 or early 1998 and was allegedly told by Coles that Baukman was his "right hand man." None of this testimony has been corroborated either. Also uncorroborated, was the testimony that sometime in 1998 or 1999, Baukman allegedly delivered to Coles at Latney's residence in Philadelphia large bundles of cash. Latney described the cash as "six inch high and nine inch wide." Latney further testified that Baukman delivered "a lot more" money than other people including Johnson. Latney moved away from the area in 2001, however prior to leaving, Baukman allegedly gave her money to forward to Coles.

Apart from the money transactions, Latney also allegedly observed Coles and Baukman exchange cocaine. She testified that it "doesn't take a rocket scientist" to figure out that the "white substance going back and forth" between Baukman and Coles was cocaine. Allegedly, on one occasion Latney was with Coles when he delivered drugs to Baukman at [Baukman's] residence. However no date on this transaction was presented.

Also, according to the government, the evidence at trial also established that Baukman leased an apartment at 339 East Essex Avenue in Lansdowne which allegedly the organization used to store, process and package cocaine and crack. The apartment was leased in the name of

Tauheed Baukman.[1]  Between 2002 and 2005, the Government presented evidence that more than $150,000.00 in cash was deposited into Tauheed Baukman's bank account.  Dante Tucker, Baukman's cousin lived in the apartment and allegedly was shown how to cook crack cocaine by Baukman.

As the result of a search warrant executed in August of 2005, agents seized a half kilo of cocaine along with crack cocaine and a "press" that the Government considered a "cocaine compression device."  Furthermore, the Government located what it alleged to be cocaine packaging material, and ten firearms.  Inside the residence a safe was located that contained drugs and a homemade videotape of a personal nature in which Baukman appeared and a business card of Baukman's attorney with a note in the back confirming receipt of $1,500.00 payment.

In another apartment at 2967 Schoolhouse Lane, where Baukman lived with Tiffany Dixon and his son Tauheed, agents found a money counting machine, some cash, three firearms, and documents linking Baukman to the apartment at 339 East Essex Avenue.  In a Cadillac, a vehicle that was allegedly driven by Baukman, the agents found some more documents linking Baukman to the 339 East Essex Avenue apartment.

During the trial the Government introduced recorded phone conversations between Coles and Baukman, which according to the Government, they discussed issues related to the drug business.  However, the alleged "drug transaction conversations" were highly challenged during the trial.

Tiffany Dixon, the Mother of Baukman's son Tauheed, lived with Baukman from 1998 through 2005. She testified that Baukman did not work and allegedly sold drugs for a living. According to Dixon, Baukman titled vehicles and apartments in other people's names, including

---

[1] Tauheed Baukman is Timothy Baukman's son.

her name and her son's name, because Baukman was selling drugs. According to Dixon, the money counting machine and the guns seized in the apartment belonged to Baukman and she knew that Baukman's cousin Tucker lived at 339 East Essex Avenue before he was incarcerated.

Antoinette Nelms, Baukman's cousin, testified that the Jaguar that was in her name was bought and paid for by Baukman. She also testified that Baukman leased and paid the rent for the East Essex Avenue apartment where Dante Tucker lived.

Special Agent Ray Armstrong of the IRS, an expert in money laundering, testified that $150,000.00 in cash was deposited into the account of "Tauheed Baukman," and that this money was used to pay the lease and other expenses for the 339 East Essex Avenue apartment and the 2967 Schoolhouse Lane apartment. According to Agent Armstrong, the money deposited into Tauheed's account was also used to pay the lease payments of the Jaguar. Armstrong also testified that during the same period a record and entertainment business that was owned and run by Baukman and Coles allegedly lost over $180,000.00. According to Armstrong, a third party account such as "Tauheed's" was consistent with an effort to hide ownership of funds and an effective means of money laundering since Baukman's name and social security number did not appear on the account.

During the trial, the defense presented the position that Baukman's credit was less than desirable and utilized Tauheed's name and credit in order to be able to finance vehicles, lease apartments, and open bank accounts.

# ARGUMENT

## I. THE CONVICTION AND/OR SENTENCE OF MR. BAUKMAN IS VIOLATIVE OF HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

1) The Performance of Counsel for Mr. Baukman Fell Below an Objective Standard of Reasonableness During the Pre-Trial, Trial and Appellate Phases.

a. Standard of Review - Ineffectiveness Prong.

In *Strickland v. Washington*, 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984), the Supreme Court established a two prong test to govern ineffective assistance of counsel claims. To obtain reversal of a conviction or to vacate a sentence based on ineffective assistance of counsel the defendant must show: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's objectively unreasonable performance, the result of the proceeding would have been different. *Id*. 466 U.S. at 688-689; *Williams v. Taylor*, 120 S.Ct. 1495, 1512-16; 146 L.Ed.2d 389 (2000).

The Court stated that, "judicial scrutiny of counsel's performance must be highly deferential" and added that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance". *Id*

The Court clarified that this reference to "highly deferential scrutiny"[2] referred only to the first or performance prong of the test and meant that,

> "... the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id. Strickland v. Washington*, 466 U.S. at 689-691.

The Court added that, "... strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after

---

[2] The Court stated that "factors which may actually have entered into counsel's selection of strategies and ... may thus affect the performance inquiry ... are irrelevant to the prejudice inquiry." *Strickland v., Washington*, 466 U.S. at 695.

less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make a reasonable and proper decision that makes particular investigations unnecessary."

Two years after its *Strickland* decision, the Court reaffirmed that this portion of the decision sets forth what test can be made in evaluating whether counsel was within the range of "reasonable professional assistance", or fell below an objective standard of reasonableness.[3] *Kimmelman v. Morrison*, 477 U.S. 365, 385-387, 91 L.Ed.2d 305, 106 S.Ct. 2574 (1986). *See also*: *Williams v. Taylor,* 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (2000).

The Supreme Court noted that, "a single, serious error may support a claim of ineffective assistance of counsel." *Id. Kimmelman* at 384. The Court added that this "single serious error" could cause counsel's performance to fall "below the level of reasonable professional assistance", even where, "counsel's performance at trial was "generally creditable enough", and even where counsel had made "vigorous cross-examination, attempts to discredit witnesses, and [an] effort to establish a different version of the facts." *Id.* 477 U.S. at 386.[4]

The government argued, and the Court agreed that the determining factor was whether or not counsel's "single serious error" or "failure" was the result of, or attributable to, a trial "strategy." *Id.* at 477 U.S. 384-386; *Williams v. Taylor*, 120 S.Ct. 1495, 1512-16; 146 L.Ed.2d 389 (2000). The Court then found that no "strategy" was involved in that case and that counsel's performance thereby fell below the *Strickland v. Washington* objective standard because

---

[3] This presupposes, for the instant argument, that the defendant provided counsel with complete and accurate information and did not place any restrictions on counsel's strategy. *Id. Strickland v Washington*, 466 U.S. at 691.

[4] See also *Murray v. Carrier*, 477 U.S. 478, 496, 91 L.Ed.2d 397, 106 S.Ct. 2639 (1986)("The right to effective assistance of counsel ... may in a particular case be violated by even an isolated error of counsel if that error is sufficiently egregious and prejudicial.")

counsel's failure was based "on counsel's mistaken beliefs" as to the laws governing discovery.

*Id.* 477 U.S. at 385.

The Supreme Court added:

"Viewing counsel's failure to conduct any discovery from his perspective at the time he decided to forego that stage of pretrial preparation and applying a 'heavy measure of deference', *ibid.*, to his judgment, we find counsel's decision unreasonable, that is, contrary to prevailing professional norms. The justification Morrison's attorney offered for his omission betray a startling ignorance of the law--or a weak attempt to shift blame for inadequate preparation. 'Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.' *Id.* Respondent's lawyer neither investigated, nor made a reasonable decision not to investigate the State's case through discovery."

*Id. Kimmelman v. Morrison,* 477 U.S. at 385.

In other words, the Court determined that counsel's omissions were not part of any "strategy" or trial tactic because they had not been taken after thorough investigation of the law and facts relevant to all plausible options available to counsel. From this, the Court determined that the omissions were professionally unreasonable and had caused counsel's performance to fall below the objective standard of *Strickland. See, Kimmelman v. Morrison,* 477 U.S. at 385-387; *Williams v. Taylor,* 120 S.Ct. 1495, 1512-16; 146 L.Ed.2d 389 (2000). In short, no deference is due to counsel's actions, and the performance of counsel falls below the *Strickland* objective standard of reasonableness[5] if counsel's specific acts or omissions are not demonstrably the result of actual strategic choices made between or among all plausible options "after thorough investigation of law and facts relevant to all possible options." *Strickland,* 466 U.S. at 691; *Kimmelman v. Morrison,* 477 U.S. at 385-387; *Williams v. Taylor,* 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (4-18-00). Where a convicted defendant is making a claim of ineffective assistance of counsel, the defendant,

---

[5] For purposes of this portion of the *Strickland* analysis, the Court presumes that counsel's failures were at least potentially prejudicial to the defendant. *Kimmelman v. Morrison,* 477 U.S. at 365, 387, 390-91.

"must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id. Strickland v. Washington*, 466 U.S. at 690.

If the record does not "conclusively" demonstrate "strategic reasons" for counsel's failures, the district court entertaining a motion under 28 USC § 2255 must hold an evidentiary hearing. *A subsequent affidavit from counsel will not suffice to establish a trial strategy, nor absolve the district court from the requirement of holding an evidentiary hearing.* [6]

In the instant case, Mr. Baukman has made specific, sworn, factual allegations which this Court should accept as true for the purpose of considering whether to hold an evidentiary hearing, because they are not conclusively disproved by the files and records of this case.

### b. Standard of Review – Prejudice Prong.

In writing for the majority in *Strickland v. Washington*, 466 U. S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984), Justice O'Connor stated the general rule that, actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." *Id.* 466 U.S. at 693, 80 L.Ed.2d at 697.

More specifically, Justice O'Connor set forth the now well known statement of the test for "prejudice" in claims of actual ineffectiveness of counsel as:

> "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Id.* 466 U.S. at 695, 80 L.Ed.2d at 698.

While the Court noted the government's, perhaps natural, inclination to argue that attorney error is harmless unless the defendant can show that "counsel's deficient conduct more likely

---

[6] *See Smith v. McCormick*, 914 F.2d 1153, 1170 (9th Cir. 1990) and *United States v. Giardino*, 797 F.2d 30, 32 (1st Cir. 1986) and *Lindhorst v. United States*, 585 F.2d 361, 365 (8th Cir. 1978).

than not altered the outcome of the case",[7] the Court specifically and explicitly rejected this

argument by the government.

In rejecting any outcome determinative test such as that employed in Federal Rule of

Criminal Procedure 33 analysis, the Court stated:

> "The result of a proceeding can be rendered unreliable, and hence the proceeding itself
> unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to
> have determined the outcome."

*Id. Strickland v. Washington,* 466 U.S. at 694; *Williams Taylor,* 120 S. Ct. 1495, 1519, (2000).

The Court further specifically rejected the application of the "actual prejudice" standard of

*United States v. Frady,* 456 U.S. 152, 71 L.Ed.2d 816, 102 S.Ct. 1584 (1982), to claims of

ineffective assistance of counsel, with the following admonishment:

> "The principles governing ineffectiveness claims should apply in federal collateral
> proceedings as they do on direct appeal or in motions for a new trial. As indicated by the
> 'cause and prejudice' test for overcoming procedural waivers of claims of error, the
> presumption that a criminal judgment is final is at its strongest in collateral attacks on that
> judgment. *See United States v. Frady,* 456 U.S. 152, 162-169, 71 L.Ed.2d 816, 102 S.Ct.
> 1558 (1982). An ineffectiveness claim, however, as our articulation of the standards that
> govern decision of such claims makes clear, is an attack on the fundamental fairness of the
> proceedings whose result is challenged. Since fundamental fairness is the central concern of
> the writ of habeas corpus, *see id. at* 126, no special standards ought to apply to
> ineffectiveness claims made in habeas proceedings."

*Id. Strickland,* 466 U.S. at 697-98, 80 L.Ed.2d at 700.[8]

The Court hearing an ineffectiveness claim should consider the totality of the factors which

guided the decision maker in the challenged proceeding, then try to determine which factors

were or were not "affected" by counsel's errors.

---

[7] This, of course, means that the 'plain error" standard also does not apply to ineffective assistance of
counsel claims. *Id. See United States v. Olano,* 507 U.S. 725, 735 (1993) (plain error "must be real and
such that it probably influenced the verdict.")

[8] *See Kimmelman v. Morrison,* 477 U.S. at 375, 393 and [n.1] (demonstration of "a reasonable
probability" that the verdict would have been different constitutes "actual prejudice" in claims of actual
ineffective assistance of counsel); *Oshorn v. Shillinger,* 861 F.2d 612, 626 and [n.13] (10th Cir. 1988)
(same); *Smith v. United States,* 871 F.Supp. 251, 255 (ED. Va. 1994) (same).

"Taking the unaffected [factors] as a given, and taking due account of the effect of the errors on the remaining [factors] a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors."

*Id. Strickland v. Washington,* 466 U.S. at 696, 80 L.Ed2d at 699.

Where through "hindsight"[9] the Court can determine that, but for the errors of counsel, there is a "reasonable probability" of a different outcome, a probability sufficient to "undermine confidence" in the challenged proceedings, the defendant has affirmatively proven prejudice. *Strickland,* 466 U.S. at 694-95; *United States v. Glover,* 121 S.Ct. 696 (2001); *Williams v Taylor,* 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (2000).

This rule is applicable to find "prejudice" where hindsight demonstrates that counsel's constitutionally deficient performance deprived a federal criminal defendant of a consideration for a favorable adjustment or downward departure under the United States Sentencing Guidelines. *United States v. Glover,* 121 S.Ct. 696 (2001)(rejecting Court of Appeals' rule that only a 'substantial' change in application of sentencing guidelines constituted "prejudice" within the meaning of *Strickland*).

The *Strickland* test for "prejudice" is applicable to cases where a criminal defendant is challenging his conviction or sentence due to actual ineffective assistance of counsel, in the prosecution of his direct appeal, *Banks v. Reynolds,* 54 F.3d 1508 (10th Cir. 1995), with the caveat that "prejudice" in this type of case is limited to the "outcome" of the direct appeal. It does not require the defendant to demonstrate that he would be "successful on remand"; only that there is a *reasonable probability* that he would have had his conviction arid/or sentence vacated and/or remanded to the lower court. *United States v. Mannino,* 212 F.3d 835 (2nd Cir. 2000).

---

[9]*Lockhart v. Fretwell,* 122 L.Ed.2d at 189-91; *Mayo v. Henderson,* 13 F.3d 528, 534 (2nd Cir. 1994) (prejudice determination, unlike performance determination, may be made with benefit of hindsight")

Based on the foregoing facts and law, Mr. Baukman has affirmatively pleaded "prejudice" in his case within the meaning of *Strickland v. Washington*, 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984) and *United Stases v. Glover*, 121 S.Ct. 692 (2001); *Williams v. Taylor*, 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (4-18-00); *Freeman v. Lane,* 962 F.2d 1252 (7th Cir. 1992) and *Orazio v. Dugger*, 876 F.2d 1508, 1513-14 (11th Cir. 1989).

## II. COUNSEL RENDERED INEFFECTIVE ASSISTANCE WHEN HE FAILED TO ADVISE BAUKMAN OF THE APPLICATION OF THE FEDERAL SENTENCING GUIDELINES EVEN IN THE MOST BASIC TERMS.

After his arrest, Baukman was remanded to the custody of the U.S. Marshal Service and was incarcerated while counsel prepared and made the required decisions on how to proceed with the defense of the case. Immediately after his initial incarceration and after counsel was retained, a total breakdown in communications occurred between them. There was never an explanation by counsel as to the complexity of the case and how complex the issues were for sentencing purposes. (See Exhibit A, Sworn Affidavit) It was never explained to Baukman that, if convicted at a jury trial, that his sentence would be calculated via the guidelines even in the simplest terms. *Id.* (Exh. A.) Neither was it explained how relevant conduct and mandatory terms of consecutive sentences were required to be imposed if he would be convicted at trial. *Id.* (Exh. A.) There was never any explanation even in the most basic terms, how the acceptance of responsibility portion of the Guidelines would mitigate the overall final sentence should he plead guilty and not proceed to trial. *Id.* (Exh. A.)

What was explained by counsel was that if he proceeded to trial that the jury would most likely convict him of a lesser offense and not convict of the more serious offenses charged in the indictment. *Id.* (Exh. A.) There was never any explanation that Baukman had the possibility of pleading guilty without further cooperation and receiving an acceptance of responsibility

sentence reduction as per the basic application of the Guidelines. *Id.* (Exh. A.) Without the explanation of the Guidelines in even the most basic terms and without any guidance as to the complexity of the case, Baukman proceeded to trial making an uninformed decision as to what would be in his best interest in light of the circumstances and based on the complexity of the case.

Counsel had an obligation to explain to Baukman the basic terms of the Guidelines, and to advise Baukman of the status of the case and how the matter would proceed should he decide to proceed to trial or should he decide to plead guilty and mitigate his term of incarceration. The final decision was for Baukman to make, not for counsel to decide. Most of the information that Baukman did receive was from Jencks material that was provided by the co-Defendants in the case while was at the jail. *Id.* (Exh. A.) The only occasion when trial counsel chose to visit Baukman at the jail was when Baukman threatened to fire counsel based on his failure to communicate. *Id.* (Exh. A.)    Baukman provided several letters to counsel on issues that he wished to address in pre-trial preparation, requesting visits at the jail, and requesting a simple explanation as to the status of the case, however no responses were ever received. *Id.* (Exh. A.)

In order to prevail on [an ineffective counsel argument], Baukman must show that his attorney made "errors so serious that counsel was not functioning as the counsel guaranteed ... by the Sixth Amendment' and that 'counsel's' errors were prejudicial; that is, 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. The court pointed out that because of the distorting effect of hindsight, a reviewing court must exercise care in determining whether counsel's actions fall below an objective standard of reasonableness. Petitioner has a right to competent counsel during the critical stages of the criminal process. *See Caruso v. Zelinsky,* 689 F.2d 435 (3rd Cir. 1982). Moreover, Baukman has

the right to make a reasonably informed decision whether to accept or pursue plea offers even without plea agreements. *United States v. Day,* 969 F.2d 39, 43 (3rd Cir.1992) (*citing Hill v. Lockhart,* 474 U.S. 52, 56-57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)). Counsel's incompetent advice violated Baukman's Sixth Amendment right to counsel. *See McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

As an analogy, in *United States v. McCoy,* 215 F.3d 102 (D.C. Cir. 2000) counsel advised his client of an incorrect application of the Sentencing Guidelines. On appeal, McCoy argued that his plea was unconstitutional because it was based on ineffective assistance of counsel. The District of Colombia agreed; it found that McCoy's guilty plea had not been knowingly and voluntarily made. *Id.* Following this same analogy, Baukman provides that his decision to proceed to trial was based on his attorney's lack of advice on the complicated nature of the case, lack of explanation of the guidelines, and lack of information as how he can mitigate his sentence by pleading guilty and not proceeding to trial. *Id.* Exh. A.

The *McCoy* Court noted that "[W]hile not every error made in calculating and applying the guidelines would constitute deficient performance under *Strickland,* the Court emphasized that 'familiarity with the structure and basic content of the Guidelines, had become a necessity for counsel who seek to give effective representation.'" *Id.* at 508  The Court further found that the prejudice prong of *Strickland* test was satisfied in that the difference between the sentencing ranges was so significant that there was a reasonable probability that if *McCoy* had been given correct information he would not have entered a guilty plea. *Id.*[10]  Counsel's failure to advise Baukman the relevant portions of the Sentencing Guidelines caused his actions to fall below a

---

[10] Although Baukman proceeded to trial based on his counsel's misinformation of the relevant conduct portions of the Sentencing Guidelines and the lack of explanation on the acceptance of responsibility portions of the guidelines, the same analogy as that presented by the *McCoy* Court can be reached in this case. Had it not been for the lack of information received by his trial attorney, Baukman would have pled guilty and not proceeded to trial.

reasonable standard of performance because a "[c]riminal defense attorneys practicing in the federal courts are expected to keep abreast of issues that affect his client's case." *Id. United States v. Loughery*, 908 F.2d 1014 (D.C. Cir. 1990). There was not a tactical reason why counsel could not have met Baukman at the jail to prepare for the defense of the case and explain the possible avenues to pursue.

In Baukman's cause, he must only show that there is a "reasonable probability" that the results of his decision to proceed to trial would have been different, *Id. Williams v. Taylor*, 529 U.S. 362, 386, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) and based on the difference in sentencing guideline ranges, there could be no doubt that a different outcome is evident. *Id.* Exh. A.

Based on the record and the files before this Court, there is a reasonable probability that counsel's actions have reached a level of ineffectiveness as enumerated in *Strickland*. Furthermore, there could be no strategic reason why counsel can justify his failure to explain the implications of the guidelines relevant conduct section to Baukman. *See United States v. Acklen*, 47 F.3d 739, 743-44 (5th Cir. 1995)(remanding for evidentiary hearing where there was nothing in record to indicate counsel's failures were attributable to strategic choice among all plausible alternatives available for defense); *United States v. Dawson*, 857 F.2d 923, 929 (3rd Cir. 1988)(absent evidence in the record, "this court will not speculate on trial counsel's motives"); *Nichols v. United States*, 75 F.3d 1137 (7th Cir. 1996) (same).

Accordingly, Baukman respectfully prays this Honorable Court determine that counsel's actions have reached the level of ineffectiveness and remand for an evidentiary hearing on the merits raised herein.

## III. COUNSEL RENDERED INEFFECTIVE ASSISTANCE WHEN HE FILED A MOTION TO SUPPRESS WITHOUT FAMILIARIZING HIMSELF WITH THE FACTS OF THE WARRANT.

In another issue, counsel filed a Motion to Suppress challenging the evidence seized after the search of the 339 East Essex Avenue apartment. The motion was so barebones that none of the defenses raised in the motion actually applied to this case. Counsel failed to include any case law whatsoever, legal reasoning, or a detailed explanation as to why the Motion to Suppress should be granted based on the facts of this case. The "boilerplate" motion presented for the District Court's consideration contained four pages with 14 different paragraphs challenging the affidavit and the search and seizure of the evidence, with nothing more than boilerplate allegations.

For example, one of the allegations raised in the Motion to Suppress, was that the search was improperly executed because law enforcement officers failed to, prior to entry, give notice of their identity, authority and purpose to any occupant of the premises specified in the warrant, and that no exigent circumstances requiring immediate forcible entry onto the premises was evident.

This defense to the Motion to Suppress was summarily disproved by the Government as no persons were inside the apartment at the time. Just as in ¶ 10 alleging that even if the law enforcement officers made an announcement of their identity, authority and purpose, they did not wait a reasonable period of time before commencing the entry. The Government's answer was simple; there was no one in the apartment at the time. Although during the Motion to Suppress hearing, counsel withdrew some of the issues raised; it is rather evident that the boilerplate Motion to Suppress would have never passed proper review before this Court. The Motion to

Suppress was merely filed to follow protocol, but that no effort into the substance or legal research into the matter was ever filed by counsel.

As the Supreme Court has noted, Baukman "... must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* *Strickland v. Washington*, 466 U.S. at 689-691. As this Court must note, there is no sound trial strategy that can be determined for not properly preparing, researching and filing a motion to dismiss that challenged the search of the residence instead of the boilerplate pleading that was filed.

Counsel's actions in this case are similar to the Court's explanation in *Morrison,*

The justification Morrison's attorney offered for his omission betray a startling ignorance of the law--or a weak attempt to shift blame for inadequate preparation. 'Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.' *Id.* Respondent's lawyer neither investigated, nor made a reasonable decision not to investigate the State's case through discovery."

*Id. Kimmelman v. Morrison*, 477 U.S. at 385.

In sum, there was no logical or reasonable explanation why such a boilerplate motion would be filed in the first instance. This court must agree, that had counsel filed a comprehensive motion to suppress, that there is a reasonable probability that the outcome of the motion to suppress hearing would have been different.

As such, this Court must agree that the granting of an evidentiary hearing to address the extent of prejudice that Baukman has suffered as a result of the filing of the barebones motion to suppress must be held where counsel can address the reasons, if any, for not filing a thorough and complete motion to suppress.

IV. COUNSEL RENDERED INEFFECTIVE ASSISTANCE WHEN HE FAILED TO REALIZE THAT THE INTRODUCTION OF THE "MENACE" MOVIE WAS REQUIRED FOR THE DEFENSE OF THE CASE SINCE BAUKMAN WAS THE DIRECTOR/PRODUCER OF THE MOVIE.

During trial, co-Defendant Coles testified that he and Baukman had made a movie called "Menace."[11] The movie depicted drug dealings in the streets of Philadelphia and according to Coles, the number of the items that were recovered in various search warrants in this case, such as the map of drug locations and money laundering machines, etc., were not actually for any drug distribution, but were merely props for the movie. Once Coles testified and presented Baukman's involvement in the movie, counsel had an immediate obligation to either introduce the movie through Coles himself, or request Coles' trial counsel to introduce the movie explaining the importance of the introduction of the movie. The Government alleged that a multitude of items located in the search of the apartments, specifically ledgers of money, maps, drug locations, money counting machines, etc., were all "tools of the trade" for the conspiracy charge in the indictment.

When the jury retired to deliberate, they sent a note requesting to see numerous items including the "Menace tapes." On the same note, the jury requested to see a notebook, tally sheets, and other films made by Coles (New Jack City: The Next Generation), phone call transcripts and wires, every witness's grand jury testimony, organizational charts used by the Government and the defense, the financial records of take down records, and an easel with paper. (*Id.* at Feb. 25, Tr. p. 64-71).

With regards to the "Menace tapes," defense counsel for Coles (Mr. Warren) immediately stated that the film was never admitted into evidence and the District Court agreed. The Court

---

[11] According to Coles, the title stood for "Me N Ace" referring to Baukman and Coles respectively.

instructed to the jury that the Menace was not offered into evidence during the course of the trial and was not available for the jury's review.

It is evident, that had counsel for Baukman realized that Coles' testimony involved the movie which Baukman was a participant in, he should have immediately requested the introduction of the movie as evidence for the defense. There was no tactical reason why Baukman's counsel would not have consulted with Coles' defense counsel (Mr. Warren), and made a tactical decision for the introduction of the movie since it provided a multitude of explanations for the items that the Government alleged were being used for the ongoing of the charged conspiracy and as "tools of the trade" of narcotics traffic.

In the response to Coles' Title 28 U.S.C. § 2255, the Government requested an evidentiary hearing on this same issue in order to clarify what strategic decision counsel chose for not including the Menace movie. It is respectfully requested that the same avenue be pursued in Baukman's Title 28 U.S.C. § 2255. During an evidentiary hearing, the Court will have the benefit of inquiring from Baukman's trial counsel if he conferred with Attorney Warren over the introduction of the movie and whether a decision, tactical or otherwise, was made to exclude the movie from the jury.

It is evident that the jury was considering the movie and the props used for the movie as a defense during their deliberations. During an evidentiary hearing, the Court will have the opportunity to inquire from Attorney McMahon whether he made a decision not to include the movie, or whether he conferred with Coles' trial counsel on the matter.

Since the Government has in essence conceded that an evidentiary hearing is required in order to clarify the ineffective assistance of counsel allegations for Coles and since Baukman was a direct participant in the movie that was not included, this Court must agree that Baukman

must be included in the request for an evidentiary hearing so that Baukman's trial counsel can clarify the reason for not requesting the introduction of the movie on Baukman's defense.

## V. COUNSEL RENDERED INEFFECTIVE ASSISTANCE BY FAILING TO PREPARE A MEMORANDUM TO THE COURT IN PREPARATION FOR JURY CHARGE CLARIFYING THE CCE OVERT ACT REQUIRED A CONTINUING SERIES OF VIOLATIONS REQUIRING A UNANIMOUS VERDICT.

During the jury charge preparation, the Court made a determination that it would redact information regarding two Philadelphia police officers pertaining to overt acts 57 and 58 in the indictment. This determination for redaction was made after the completion of the evidence at trial. As a result, the following colloquy occurred:

> Mr. McMahon: And then the second issue I have, Your Honor, is that the CCE situation where the unanimous three issues has to be found. And I know that your charge does include that fact - -
>
> The Court: Yes.
>
> Mr. McMahon: - - but I think when you read the case, Echevarria, which I gave to the Court this morning, they analogize it to the Rico situations toward the end of the opinion where they talk about - - when Rico, as we all know, delineates the predicate acts and that in this particular case, how are we to know that the jury unanimously found the same three - - -
>
> The Court: Well, they're told that that's what they're supposed to do in my charge.
>
> Mr. McMahon: But do we know what three they are? They may be three that are not proper if you have to - - if the Government's alleging that there are three and that we have to defend against those three and there are three if you read the indictment, they use the indictment - - they use three in regards to Mr. Baukman, count 1 and I think count 67, 68 are the only ones that mention him, well then they can submit those three as the acts that they have to find unanimously to be able to find he is a CCE. But otherwise, what are we defending? We don't know - - what three items are we defending. And if they come back with a verdict of guilty or not, how do we know which three they found?

*Id.* February 20, 2008 Tr. p. 7-8.

Counsel, unaware of the *United States v. Echevarria*, 854 F.2d 638 (3rd Cir. 1988) decision, failed to advise the Court that the jury instruction provided required a special verdict as to which three "series" the jury would be relying upon unanimously to convict Baukman. In fact, part of

the testimony that the jury could have relied upon for a unanimous verdict on the series of three violations, *could have arisen from the testimony that was redacted from the indictment* prior to the jury starting their deliberation.

In essence, since the Judge redacted the indictment, a jury instruction requiring that the jury find specificity on the series of three overt acts for the CCE conviction, must be determined within the "non-redacted" information contained in the indictment. It is not known if the jury relied on the three overt acts from information that was redacted from the indictment and removed from the jury's consideration.

In the absence of a specific unanimity instruction directed to the Government's several claims, it is apparent that the jury *did not* have to unanimously agree in this case on any particular criminal act that was committed by Baukman *within the non-redacted or the permissible testimony.* In a similar case, *United States v. Beros*, 833 F.2d 455 (3rd Cir. 1987) the Court determined that "given the range of possibilities by which the jury could have reached its verdict, and the possibility that individual jurors reasonably could have disagreed as to which act supported guilt, it was necessary that the District Court in that case clearly instruct the jury regarding the required unanimity of its verdict." *Id. Beros* at 458.

In this case, had counsel prepared he would have clearly been able to establish to the Court the reasoning behind the *Echevarria* case. *Echevarria* clearly specified that the jury must be unanimous on which three series of acts it would rely upon to convict Baukman. Since the jury heard information regarding overt acts that were redacted from the indictment, a specific jury instruction was required in order to direct the jury to reach a determination only on the overt acts presented in the non-redacted indictment.

Here, the jury was instructed that the continuing series element required them to find three violations of the drug laws. However, the failure of the Court and refusal to give the requested instruction clarifying that the overt acts that the three violations must be ascertained from the non-redacted indictment, there was no assurance that the jury unanimously agreed that the same three narcotics violations had occurred. In Baukman's case, the District Court failed to insure that the "jurors [would] be in substantial agreement as to just what [happened] as a step preliminary to determine whether Baukman is guilty of the charged crime." See *United States v. Gibson*, 553 F.2d 453, 457-58 (5th Cir. 1977).

Since the jury in this case heard testimony from two Philadelphia police officers pertaining to overt acts 57 and 58 of the indictment, the District Court decided to redact at the end of the trial without providing the jury the ample notice that the overt acts were no longer permissible to be used as predicate acts for the CCE charge, it is unknown which predicate acts the jury relied upon for the unanimous determination of guilt based on the series of the over acts. Without notification in this case, it created the potential that the jury was confused. It is unknown which three predicate acts the jury determined, or if they unanimously agreed on any of the proper overt acts to trigger the mandatory punishment of the CCE conviction. As such, counsel's failure to properly object to the improper jury instruction, in light of the Court's *Echevarria* decision, and failure to prepare for the sentencing hearing, rendered a clear Sixth Amendment violation that requires vacate of the CCE conviction and/or the granting of an evidentiary hearing.

## VI. COUNSEL WAS INEFFECTIVE WHEN HE FAILED TO ADVISE THE COURT THAT BAUKMAN WAS NOT PRESENT DURING THE POINT WHEN THE JURY NOTE WAS ADDRESSED.

After the jury were read the instructions, they were sent to deliberate the charges. As usually occurs, the U.S. Marshal takes custody of Baukman and escorts him to a holding cell somewhere inside the Federal Building until his presence is required before the Court after the jury completes the deliberation. Once the jury retired to deliberate, they sent a note to the judge requesting several items from evidence to be included. The Court addressed the jury note and what exhibits would be allowed and not allowed into the Jury room, however, at no point does the record establish that Baukman or the co-defendants for that matter were present at any stage of the proceeding. (See Exhibit B, Jury Note Transcripts)

Baukman's sworn affidavit does establish that he was not present at any point during the reading of the jury note as required by the rules. (See Exh. A). Counsel had an obligation to immediately advise the Court that Baukman's presence was required during the reading of the jury note.

The Federal Rules of Criminal Procedure Rule 43 clearly establishes that Appellant has a right to be present:

Rule 43. Defendant's Presence

(a) when required - unless this rule, Rule 5 or Rule 10 provides otherwise, the defendant must be present at:

(1) the initial appearance, the initial arraignment, and the plea;

(2) every trial stage, including jury empanelment and the return of the jury verdict; and

(3) sentencing.

*Id.* Federal Rules of Criminal Procedure Rule 43.

The courts have clearly established that a judge in response to a note from the jury is a stage of trial at which a criminal defendant has a right to be present. See *United States v. Degraffenried,* 339 F.3d 576 (7th Cir. 2003). The courts have applied the harmless error analysis if the error does not affect "a substantial right." The absence of a stage of a trial is harmless if the issue involved is not one "in which counsel will be likely to consult with the defendant" or which the defendant "if consulted, will be likely to have an answer that would sway the judge." *Quoting United States v. Silverstein,* 732 F.2d 1338 (7th Cir. 1994). However, in this case, the Jury was inquiring on important issues of evidence that required Baukman's presence. Baukman had a right to be present during this critical stage of the proceeding. The record reflects that Baukman was not consulted nor was he present during the reading of the jury note. The jury was brought into the courtroom and left to wonder why Baukman was not present at this stage.

As such, this Court must agree that counsel's failure to address the court and request that Baukman be present for the critical part of the trial, requires an evidentiary hearing to clarify why counsel failed to request Baukman be present during the answering of the jury note, in the jury's presence.

VII. APPELLATE COUNSEL RENDERED INEFFECTIVE ASSISTANCE WHEN HE FAILED TO RAISE ON APPEAL THAT THE COURT HAD ERRED IN THE JURY CHARGE BY FAILING TO CLARIFY THAT THE CCE OVERT ACT REQUIRED A CONTINUING SERIES OF VIOLATIONS BE FOUND BY A UNANIMOUS VERDICT.

During the jury charge preparation, the Court made a determination that it would redact information regarding two Philadelphia police officers pertaining to overt acts 57 and 58 in the indictment. This determination for redaction was made after the completion of the evidence at trial.

Trial counsel failed to explain to the court that pursuant to *United States v. Echevarria*, 854 F.2d 638 (3rd Cir. 1988) the court was required to advise to the jury, that via a special verdict sheet, they had to find which three "series" the jury would be relying upon unanimously to convict Baukman. There is a strong possibility that the jury relied upon the testimony heard from part of the redacted information from the indictment since they had heard that testimony during the trial. The Court denied the request and the matter was preserved for appeal. For some unknown reason, appellate counsel failed to raise the issue, causing Baukman to attempt to raise the issue *pro-se*. The Third Circuit did not address the *pro-se* filing.

The Third Circuit addresses an ineffective assistance of counsel claim in the same fashion as a trial counsel's ineffectiveness:

> Fifth Amendment due process entitles a [federal] criminal defendant to the effective assistance of counsel on his first appeal as of right. *Evitts v. Lucey*, 469 U.S. 387, 396, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985). The two-prong standard of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), applies to a defendant's claim that his appellate counsel was ineffective even though *Strickland* was premised on the Sixth Amendment right to effective assistance of counsel at trial. *Smith v. Robbins*, 528 U.S. 259, 285, 120 S. Ct. 746, 145 L. Ed. 2d 756 (2000); Smith v. Murray, 477 U.S. 527, 535-36, 106 S. Ct. 2661, 91 L. Ed. 2d 434 (1986); *United States v. Mannino*, 212 F.3d 835, 840 n. 4 (3d Cir. 2000) (citations omitted)]. First, the defendant "must show that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Second, he must show that there is "a reasonable probability" — "a probability sufficient to undermine confidence in the

outcome," but less than a preponderance of the evidence — that his appeal would have prevailed had counsel's performance satisfied constitutional requirements. *Id.* at 694-95.

*Id.* United States v. Schwartz, 925 F. Supp. 2d 663, 685 (E.D. Pa. 2013)

In *United States v. Mannino*, 212 F.3d 835, 844 (3d Cir. 2000), the Third Circuit restated the ineffective assistance of appellate counsel prejudice standard in another helpful form: "[t]he test for prejudice under *Strickland* is not whether petitioners would likely prevail upon remand, but whether we would have likely reversed and ordered a remand had the issue been raised on direct appeal." *Id.*

In the instant matter, remand was evident. For all practical purposes the jury relied on evidence heard from the redacted indictment to unanimously convict Baukman as per the required CCE instructions. A special jury instruction would have resolved the issue. However, it is unknown if the jury found specificity on the series of three overt acts for the CCE conviction from evidence that was redacted from the indictment and that was removed from the indictment and from the jury's consideration.

As such this court must agree that the properly preserved issue for appeal should have been raised as there is a reasonable probability that Baukman would have been successful on the claim. This Court should grant an evidentiary hearing to address why the matter was not properly raised in the appellate court.

VIII. APPELLATE COUNSEL WAS INEFFECTIVE WHEN HE FAILED TO RAISE ON APPEAL WHETHER THE COURT ERRED IN NOT ALLOWING THE JURY TO DETERMINE DRUG QUANTITY IN LIGHT OF THE SUPREME COURT'S DECISION IN ALLEYNE.

Before the trial commenced, the government submitted the trial memorandum and motion in limine stating:

> "where enhanced penalties are based on the weight of narcotics, the statutory weight will be alleged and proven at trial to prevent any problems arising from the decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The jury should determine the weight of the drugs attributable to each co-conspirator by special interrogatory in order to conform with the dictates of *Apprendi*."

*Id.* D.E. 846

At the end of the trial the government's positions changed as to whether the jury was required to make a factual determination on the drug amounts. On February 19, 2008, trial counsel requested the court break down the drug amounts into individual verdict as to each defendant via a special jury interrogatory. After the request was made, the following colloquy occurred:

> Counsel: Judge, just so we're all clear , after all our fact witness and so forth are done, will we have a few minutes with your Honor just to make sure that everybody is clear on the instructions and nobody has any –
>
> Counsel: Yes I would like –
>
> The Court: Well, we'll deal with that first thing –
>
> Counsel: Because I'm going to read it again tonight.
>
> The Court: When you go back, we'll finish tomorrow, when you go back and take a look, if you find something that you have a real problem with, fax that into my office.
>
> Counsel: Okay
>
> The Court: –- and we will take a look at it.

*Id.* (Feb. 19, 2008, Tr. p. 61-62)

The following day, February 20, 2008, the following colloquy occurred:

The Court: All right. Counsel, yesterday I gave you the verdict slip that I have prepared and a copy of the charge that I intend to give. At the end of the day yesterday, I asked for your input. We discussed the situation. There was a suggestion  made that the verdict slip ought to be changed so that the amount of drugs involved with each defendant found guilty of conspiracy should be reflected rather than the total amount of the drugs.  At the end of that discussion, I had requested that  you submit authority that supported that proposition and also  a copy of whatever amended amendment that you wanted to offer  to the verdict slip. I was here until 9:00 last night, I received nothing. There was this morning, I think, Mr. McMahon, you handed my --

Mr. McMahon: Yeah.

The Court: -- law clerk a couple of cases. The one case dealing with conspiracy didn't talk about that issue at all.

Mr. McMahon: Well, I mean, yes and no. I mean, you're right, there's not directly deal with that issue. I was -- something happened last night, I was doing this all this morning, around 6:00 this morning I was doing this research on this thing. And as far as the two issues, as to the -- the only thing -- I brought that case up because it talks in that case about different conspiracies and whatnot in that particular case. And I think it's clear just as a logical matter in this case that a jury could find, and it's not unreasonable for them to find that, for example, my client, Mr. Baukman, was, in fact, in a drug conspiracy with Dante Tucker only. And -- but it would fit the elements of the case. I mean, by that case it says it doesn't have to be all -- and the Government's own request to charge, it doesn't have to be all of the people. And if he's just in a conspiracy with Dante Tucker, say, or Hakiem Johnson and that's what the jury finds, then aren't they only responsible for the foreseeable drugs and consequences of that particular conspiracy?

The Court: Well, this is the first time anyone suggested that there are multiple conspiracies in this matter and I am going to submit it to the jury as Count 1, one conspiracy, as the evidence has been presented and as the situation has been submitted to me and to the jury from the very beginning.

Mr. McMahon: Well -- and I understand that was the theory in the beginning and that's what the Government opened with and they attempted to present, but I certainly -- I mean, if you just look at Mr. Baukman's situation in the case, the evidence as to his interplay with any of the other individuals in this case is just not present and –

The Court: Well, I understand your position. Mr. Lloret, do you want to -- or Mr. Bresnick, do you want to add anything at this juncture on that issue?

Mr. Bresnick: I don't think it's necessary, Your Honor. The indictment charges, the conspiracy that Your Honor will instruct on, the jury is free to believe that there either was a conspiracy or there was not. There -- if Mr. McMahon want to get up there and argue a

variance or multiple conspiracies, he's free to do so, of course, but I think the jury can find, based on the evidence here, that there was one conspiracy, Mr. Baukman was a knowing member of it, and that there is no need to change the jury instructions or the verdict form.

The Court: All right.

Mr. McMahon: I already agreed they could find that. I'm not disputing that they couldn't find that, I'm just saying that there's an alternative of -- that they could find also, Judge.

The Court: All right. I understand your position. I'm going to submit the -- the matter to the jury as I have indicated in the instructions. <u>Now, with regard to the suggestion that there ought to be a breakout of the amount of drugs, I am going to submit this matter to the jury on the original verdict slip. I think that is the appropriate thing to do. No one has submitted authority to me that would support the proposition that I should break out the amount of drugs as it relates to each conspirator.</u> And –

Mr. McMahon: <u>Well, I mean, fine. Then just note our objection because I think that -- like I said, it just logically follows that there could be a conspiracy found by a jury that doesn't encompass the entire case that they're speaking about.</u> It could be –

The Court: All right. I understand.

*Id.* (Feb. 20, 2008, Tr. p. 4-6)

Trial counsel preserved the issue for appellate review. The presentence investigation report's drug quantities were challenged. Baukman argued that as a matter of due process, facts proven may be a basis for sentencing "only if they have some minimal indicium of reliability beyond mere allegations."

For example, paragraphs 21 and 71 of the presentencing report are direct quotes from the Government's trial memorandum (at 2), they cannot be used to calculate a drug amount against Mr. Baukman; as the government's trial memorandum is merely an allegation of what the government intends to prove. There was no testimony, physical evidence or wire intercepts, to give any credence to this statement of Baukman being Coles' principal partner in the CCG.

At sentencing trial counsel argued that "based on the testimony in this case, there's absolutely no evidence that is specific and reliable that the Court could make a finding of those

levels of drugs to this defendant." The jury's verdict slip for Count 1 said that the conspiracy involved five kilograms or more of cocaine powder and fifty grams or more of cocaine base, "was the general inventory across the board for everybody. It wasn't specific as to Timothy Baukman's role in this." *Id.* (Tr. Sent. p. 7)

The matter was preserved for appellate review based on the arguments presented at trial and on the government motion *in limine*. The adequately preserved issues before the District Court warranted that the matter be raised on appeal. The record as it currently stands, requires an evidentiary hearing to determine the strategic reason, if any, why appellate counsel did not raise a properly preserved issue on appeal.

## IX. THE CUMULATIVE IMPACT OF TRIAL COUNSELS ERRORS ADDRESSED HEREIN REQUIRE RESENTENCING AND/OR AN EVIDENTIARY HEARING.

Baukman contends that each of the errors addressed herein was sufficiently prejudicial to require a reversal of his sentence. However, should the court disagree, then the cumulative effect of these errors deprived Baukman of fair and just assistance of counsel. "Individual errors, insufficient in themselves to necessitate a new trial, may in the aggregate have a more debilitating effect ... so as to deny due process." *United States v. Fernandez,* 145 F.3d 59, 66 (1st Cir. 1998) *See, e.g., United States v Hands,* 184 F.3d 1322, 1334 (11th Cir. 1999); *United States v. Munoz,* 150 F.3d 401, 418 (5th Cir. 1998), *cert. denied,* 525 U.S. 1112 (1999).

The errors here were many, they were all interrelated and their cumulative impact was devastating to Baukman's right to due process and a clear violation of his Sixth Amendment right to effective assistance of counsel.

Wherefore, Baukman respectfully prays this Honorable Court vacate his conviction and sentence due to the cumulative effects of counsel's errors. In the alternate, Baukman requests

that an evidentiary hearing be granted to allow him an opportunity to address the facts of the issues raised and further develop the record.

## X. AN EVIDENTIARY HEARING IS NECESSARY AND WOULD BE USEFUL TO THE COURT

Title 28, United States Code, Section 2255 provides that a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released or for reduction of sentence may move the court which imposed the sentence to vacate, set aside or correct the sentence. This section also provides as follows:

> "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."

*Id.* Title 28 U.S.C. § 2255

In the instant case as set forth in the § 2255 motion, and the foregoing arguments, Baukman has pleaded, presented evidence, and argued the applicable law to demonstrate that his conviction and/or sentence is violative of his Sixth Amendment right to effective assistance of counsel in the pre-trial process. Baukman has also pleaded, presented evidence, and argued the applicable law to demonstrate that his conviction and sentence is violative of his Sixth Amendment right to effective representation by counsel in the sentencing and appellate phases.

While many of the allegations are already well established by the files and records of this case, many of the material allegations concern events which took place outside the courtroom and are not, therefore, part of the "files and records". These allegations require an evidentiary hearing under well settled law. *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994)(evidentiary hearing required unless § 2255 motion, files, and trial record "conclusively show" petitioner entitled to no relief); *Virgin Islands v. Weatherwax*, 20 F.3d 572, 573 (3rd Cir.

1994)(petitioner entitled to evidentiary hearing on ineffective assistance of counsel claim where facts viewed in light most favorable to petitioner would entitle him to relief*); Stoia v. United States*, 22 F.3d 766, 768 (7th Cir. 1994) (same); *Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir 1994) (same); *Nichols v. United States*, 75 F.3d 1137, 1145-46 (7th Cir. 1996) (petitioner entitled to evidentiary hearing on claim of ineffective assistance of counsel when record inconclusive on issue); *United States v. Witherspoon*, 231 F.3d 923 (7th Cir. 2000).

Based on all of the foregoing, Mr. Baukman respectfully requests this Honorable Court to ORDER an evidentiary hearing where he can prove his case.

## CONCLUSION

WHEREFORE MOVANT Mr. Baukman respectfully asks this Honorable Court to: (A) ORDER an evidentiary hearing as set forth in his § 2255 motion; and, upon proof of his allegations herein, ORDER that Mr. Baukman's conviction and sentence be VACATED.

Done this 5th day of October 2015.

JG1063
John J. Griffin, Esquire
155 Gaither Drive, Suite B
Mount Laurel, NJ  08054

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

TIMOTHY BAUKMAN

     Petitioner,

vs.                       Criminal Docket No.: 05-440

UNITED STATES OF AMERICA

     Respondent.

_____/

## SWORN AFFIDAVIT OF
## TIMOTHY BAUKMAN

COMES NOW, Petitioner, TIMOTHY BAUKMAN pursuant to Penalty of Perjury under Title 28 U.S.C. § 1746, with his Sworn Affidavit in Support of Motion to Vacate Sentence pursuant to Title 28 U.S.C. § 2255 and provides as follows:

1. I am the Petitioner in the above captioned cause.

2. I was represented by Attorney Jack J. McMahon, during my criminal case.

3. At no time during my pre-trial preparation, did my attorney ever explain to me the repercussions of the guidelines, the application of the guidelines relevant conduct, nor the application of the guidelines acceptance of responsibility sections.

4. There was never any discussion that uncharged drug quantities would ever be applied to my sentence at any stage.

5. In fact, it was not until I threatened to fire Mr. McMahon that he appeared at the jail to discuss the case and how he was planning on representing me.

6 There was never any meaningful conversation over the defense of the case.

7. There was never an explanation by counsel as to the complexity of the case and how complex the issues were for trial and sentencing.

A

8. It was never explained how relevant conduct and mandatory terms of consecutive sentences were required to be imposed if I would be convicted at trial.

9. There was never any explanation that I could avoid an extended term of incarceration if I plead guilty versus proceeding to trial.

10. There was never any explanation even in the most basic terms, how the acceptance of responsibility portion of the Guidelines would mitigate the overall final sentence should I plead guilty and not proceed to trial.

11. Had counsel taken the opportunity to explain to me the guidelines in even the most basic term, I would have never proceeded to trial. At all stages I was under my attorney's directions and advice. The only information I did receive was from my co-defendant's Jencks material that we reviewed at the jail. I did not receive any Jencks material from Mr. McMahon.

12. I provided several letters to counsel on issues that he wished to address in pre-trial preparation, requesting visits at the jail, and requesting a simple explanation as to the status of the case, however no responses were ever received.

13. All I was told was that if I proceeded to trial, the Jury would only convict me to a lesser offense. There was no explanation to me that a jury verdict would expose me to such a long term of incarceration, or that by pleading guilty, even without cooperation, the guidelines would represent a reduction in my sentence.

14. Had it been explained that the case was so complex; I would have never proceeded to trial and would have mitigated my sentence by pleading guilty.

15. I had never heard the application of the guidelines prior to my sentencing date.

A

16. I was in total shock when it was explained that my sentence would be calculated via the guidelines after my trial.

17. After I read my trial transcripts, I realized that the jury had submitted several notes during their deliberation.

18. I am sure I was not present when the Court addressed the jury note regarding the Menace movie.

19. I recall after the jury left to deliberate, I was escorted to a holding cell by the U.S. Marshall's Service, however, I was not returned to the courtroom when the jury submitted the note addressing Menace movie question.

20. I did not address this matter with McMahon, since I was not aware that a jury note was submitted on the Menace movie issue, until after I was sentenced, my appeal was over, and I had an opportunity to review the trial transcripts.

I provide these statements under penalty perjury under Title 28 U.S.C. § 1746 as facts that are true to the best of my recollection.

Done this 2-2 day September 2015.

Timothy Baukman

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Philadelphia, PA |
| | ) | CR-05-440 |
| vs. | ) | |
| | ) | February 25, 2008 |
| ALTON COLES a/k/a NASEEM COLES, | ) | |
| et al., | ) | |
| | ) | |
| Defendant. | ) | |

TRANSCRIPT OF TRIAL
BEFORE THE HONORABLE R. BARCLAY SURRICK
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For the Government:        MICHAEL J. BRESNICK, ESQUIRE
                          RICHARD A. LLORET, ESQUIRE
                          U.S. ATTORNEY'S OFFICE
                          615 Chestnut Street, Suite 1250
                          Philadelphia, PA  19106

For the Defendant:        CHRISTOPHER D. WARREN, ESQUIRE
Alton Coles               Law Office of Christopher Warren
                          1500 Walnut Street
                          Philadelphia, PA 19102

For the Defendant:        JACK J. McMAHON, JR., ESQUIRE
Timothy Baukman           Law Office of Jack McMahon
                          1500 Walnut Street, Suite 900
                          Philadelphia, PA  19102


Audio Operator            INNA GOLDSHTEYN


Transcribed by:           DIANA DOMAN TRANSCRIBING
                          P.O. Box 129
                          Gibbsboro, New Jersey 08026-129
                          (856) 435-7172
                          FAX:  (856) 435-7124
                          Email:  Dianadoman@comcast.net

Proceedings recorded by electronic sound recording; transcript
produced by transcription service

B

1    THE COURT:  ...indictment and a copy of the Court's

2    charge that we're sending out.  Have you had the opportunity to

3    look at it and make sure it's --

4    MR. LLORET:  Judge, I trust the Court.  Mr. McMahon,

5    however, does not.  So --

6    THE COURT:  Okay.  Mr. Finney is --

7    MR. MCMAHON:  I don't trust --

8    MR. LLORET:  -- just bear that in mind.

9    MR. MCMAHON:  -- trust Mr. Lloret.  That's who.

10   THE COURT:  Mr. Finney, as soon as the attorneys have

11   had a chance to take a look at it, take it out.

12                            (Recess)

13   THE COURT:  Okay.  Counsel, we've received a note

14   from the foreperson of the jury.  I don't know whether you've

15   had a chance to take a look at it.  They ask for several

16   things.  Let me go down through the list.

17   They ask for Menace tapes.

18   MR. WARREN:  They were never admitted into evidence.

19   THE COURT:  They were not admitted into evidence, and

20   I will tell the jury that.

21   MR. LLORET:  Okay.

22   THE COURT:  525HHH red notebook.

23   MR. WARREN:  Now, the problem with that, Judge, is

24   you'll recall the portions of the red notebook had some of the

25   stuff written in back and we couldn't identify who wrote it and

1    it's hard -- but I think what they're referring to, because the

2    next exhibits talk about tally sheets.  I think they want --

3    like 50 -- 501Z1 is a tally sheet that was seized from Mullica

4    Hill, I believe.  All right.  525HHH, they did admit

5    specifically into evidence those tally sheets with --

6            THE COURT:  I think perhaps what we ought to do is

7    make a copy of the front page of that notebook, and then the

8    tally sheet that was specifically referred to.

9            COUNSEL:  Right.

10           MR. MCMAHON:  That's -- I think that's the way to go

11   too.

12           THE COURT:  And send that out, and then we have 502P1

13   and --

14           MR. MCMAHON:  What is that?

15           MR. WARREN:  502P1?

16           MR. HARMELIN:  I believe that has to do with my

17   client.  502P1 is a blue tally book, page 3.

18           THE COURT:  Right.

19           MR. WARREN:  Tally sheets.  I think they were looking

20   at the tally sheets.

21           MR. MCMAHON:  And it's 501 --

22           MR. WARREN:  501P1 is a tally sheet for Mullica Hill.

23           THE COURT:  Okay.  So we will give them those.

24   What --

25           MR. WARREN:  New Jack City:  The Next Generation was

1  admitted into evidence.

2         THE COURT:  It was admitted into evidence.  There is

3  no way for them to play it in the jury room.

4         MR. WARREN:  That is true, and I think we ought to

5  tell -- that kind of coincides their -- you see where they want

6  phone call transcripts and wires?  I think we need to advise

7  them that if they want to hear or see this stuff, they're going

8  to have to send us a note and we'll set it up and play it for

9  them.

10        THE COURT:  I think that's the only way it can be

11 dealt with.  There is no way to get it into the jury.

12        MR. LLORET:  I don't know any other way to do it.

13        THE COURT:  Yeah.  Okay.  Okay.

14        MR. WARREN:  Grand jury testimonies, I mean, that --

15 we can't send -- they don't get that.  I mean, they're going to

16 have rely on their recollection.  I think --

17        MR. LLORET:  If they're talking about the -- just the

18 transcripts that were admitted into evidence regarding Thais

19 Thompson, but it looks like they're asking for everybody's --

20        MR. MCMAHON:  No.  That's Thompson, Custis, Latney.

21 Yeah.

22        THE COURT:  They're asking for everybody's, and I

23 think the most prudent way to deal with that is simply tell

24 them that it's their recollection of the testimony --

25        MR. WARREN:  Right.

1              THE COURT:  -- that counts.

2              MR. WARREN:  Right.

3              MR. MCMAHON:  That's fair.

4              MR. HARMELIN:  Your Honor, if I may, I noticed on the

5    note there, they squeezed in my client's name next to Faison,

6    and I don't believe there is any grand jury testimony regarding

7    that.

8              THE COURT:  I don't believe there is either.

9              MR. WARREN:  Organizational charts all for Government

10   and defense.  Well, I didn't prepare an organizational chart.

11             MR. LLORET:  I think --

12             MR. WARREN:  I think they want the --

13             MR. LLORET:  -- Government chart, but that's the only

14   one.

15             MR. MCMAHON:  I think they probably -- I mean, I'm

16   not saying it's admissible, but they're probably referring to

17   the organizational charts I used in my closing argument.  I

18   think that's what they're talking about, because it says -- it

19   says Government and defense, and the only defense

20   organizational chart was the ones that I used in my closing

21   argument.

22             MR. LLORET:  Well, they -- they weren't admitted.

23             MR. MCMAHON:  No.  I didn't say they were.

24             MR. LLORET:  No.  I know.

25             MR. MCMAHON:  I didn't say they should be given.  I'm

1   just saying that I think that's what they're referring to.

2            THE COURT:  The Government's charts that were

3   admitted can be sent out, and we can ask them to be more

4   specific about defense charts.  There were no defense charts

5   actually offered into evidence in this case, right?

6            MR. MCMAHON:  No.  The only defense charts that I

7   think they could possibly be referring to, Your Honor, is the

8   defense chart that I used in my closing argument, the --

9   because I did a organizational chart myself for the closing

10  argument.  If you recall, it's right over there --

11           THE COURT:  Yes.

12           MR. MCMAHON:  -- which was an organizational chart.

13  So I'm not saying they should have it.  I'm just saying that's

14  what they're probably referring to.

15           THE COURT:  All right.

16           MR. LLORET:  Your Honor, I'll correct that.  I don't

17  think the Government's organizational chart was moved in.  I

18  think Mr. --

19           MR. WARREN:  No.  That was --

20           COUNSEL:  You're right about that.

21           MR. WARREN:  -- demonstrative, Judge.

22           MR. LLORET:  I think Mr. Bresnick referred to it just

23  as a demonstrative aid during his opening, but we never

24  actually admitted it through a witness.

25           COUNSEL:  That's correct.

1          MR. WARREN:  I think -- remember, we had a big fight

2     about whether or they'd be allow to use -- when you allowed

3     them to use it, it's strictly for demonstrative purposes, and

4     that was solely the use to which it was put.

5          MR. LLORET:  I have it jotted down here, Your Honor,

6     but I think -- I just conferred with Mr. Bresnick, and neither

7     of us recall ever actually admitting that.

8          THE COURT:  We'll just simply indicate to them that

9     there are no organizational charts that can go out with them.

10         MR. MCMAHON:  Well, yeah.  I think that's fair, and I

11    think -- but I think you should say that the organizational

12    charts were --

13         MR. WARREN:  Not admitted into evidence.

14         COUNSEL:   -- no admitted evidence.  They were used

15    for demonstrative purposes only.

16         MR. WARREN:  Right.  They're not evidence.

17         MR. LLORET:  And I think the same thing could be

18    said, Your Honor, to sort of put an end to it on the grand jury

19    transcripts, that --

20         MR. WARREN:  Yeah.

21         MR. LLORET:   -- the only grand jury testimony that

22    was admitted was very specific clips relating to Ms. Thompson,

23    and other than that, there were none admitted.

24         MR. WARREN:  They're not in evidence.  Yeah.

25         MR. LLORET:  Yeah.

1              THE COURT:  Okay.

2              MR. WARREN:  They want the mortgage file on the Pike

3    Creek stuff.  That was admitted.

4              THE COURT:  That was offered into evidence.

5              MR. LLORET:  Yes.

6              MR. SMITH:  Yeah, but Your Honor, I'm not sure if the

7    -- and please correct me if I'm wrong, Your Honor, but I'm not

8    sure if the Pike Creek file was here, that we received

9    everything from Pike Creek.  I'm not sure if we have all the

10   notes, memos, paperwork in both NVR as well as Pike Creek, but

11   most certainly Pike Creek.

12             MR. LLORET:  We do.  I mean, what's in evidence is in

13   evidence.

14             MR. WARREN:  Yeah.

15             THE COURT:  All right.

16             MR. WARREN:  Take Down's financial records.  That, I

17   think, they're accepting my invitation to review the stuff that

18   was moved into evidence by the Government that was seized.

19             MR. LLORET:  That's in evidence.

20             MR. WARREN:  That's in evidence.  Yeah.

21             THE COURT:  We have that?

22             MR. LLORET:  Yes.  That's with Agent -- the various

23   materials that Agent Armstrong testified to.

24             THE COURT:  All right.

25             MR. LLORET:  That will be available.

1          THE COURT:  Okay.  We'll tell them they can have

2    that.

3          MR. WARREN:  Easel and paper.  As long as it doesn't

4    say they sold cocaine, I have no objection to sending it back.

5          MR. LLORET:  As long as it doesn't have Mr. Warren's

6    notes all over it.

7          COUNSEL:  Was that a weasel or easel, Your Honor?

8          THE COURT:  We'll send out an easel with a stand so

9    that they can use it for their own purposes.

10         MR. WARREN:  And, you know, just for the record, they

11   seemed to have made pretty good notes of what the exhibit

12   numbers were and, you know -- I don't think they'll have any

13   trouble identifying whatever it is they want.  So --

14         THE COURT:  All right.  Mr. Finney -- well, before we

15   get to that, Mr. Lloret, what do you have?

16         MR. LLORET:  Yes, Your Honor.  There is two documents

17   that we've -- we've brought over now, Your Honor.  One is the

18   index of calls.  Let me hand up a copy of this to Your Honor.

19   the index of calls relates obviously to the various phone calls

20   that were put into evidence.

21         I've been through this on several occasions.  The --

22   there are actually two indexes.  One is by tab and goes

23   sequentially by the tab numbers under which they were

24   introduced --

25         THE COURT:  Uh-huh.

1          MR. LLORET:  -- and it references also the book

2     number, and the second one is actually by exhibit number and

3     cross references the tab.  So there is -- there is actually two

4     indexes or indices --

5          THE COURT:  All right.

6          MR. LLORET:  -- for the convenience of the jurors.

7     The second is the Government has put together its final trial

8     exhibit list.  I circulated that to defense, and I don't think

9     we have any disputes about the items that the Government

10    contends are in evidence.  What we've done, Your Honor, is

11    eliminate the items that were not placed into evidence, and

12    that's -- and that's that.

13         THE COURT:  All right.  Counsel agree that the index

14    and the trial exhibit list should go out with the jury?

15         MR. WARREN:  Yes, sir.  I've looked at it.  It's

16    fine.

17         THE COURT:  No objection?

18         MR. SMITH:  Does the index list have the call -- the

19    intercept by -- introduced by Mr. Warren in here.

20         MR. WARREN:  No, it doesn't.  That would be defense

21    exhibit --

22         MR. HETZNECKER:  Judge, we'll try to compile --

23    compile a list of defense exhibits so that can go out as well.

24         THE COURT:  All right.

25         MR. HETZNECKER:  We're in the process of doing that.

1    Judge, may I make a comment about the grand jury notes?  I

2    agree generally.  The only distinction is because

3    Ms. Thompson's evidence is specific with respect to an grand

4    jury testimony, I simply would like the jury to be informed

5    that since it was two weeks ago, that if they want to hear it,

6    they can request to hear it rather than sending the transcript

7    out.  In other words  --

8              MR. LLORET:  It was read to them.

9              THE COURT:  It was read to them, I believe.  You

10   don't have a --

11             MR. HETZNECKER:  No, but if it was -- but if they

12   have questions about it, that they're certainly able to hear it

13   again if they want to hear that evidence again as opposed to

14   sending the transcript

15             THE COURT:  You mean it can be read to them again.

16             MR. HETZNECKER:  Correct.

17             THE COURT:  All right.

18             MR. WARREN:  I've got -- for Mr. Smith's -- I've got

19   DC-10, which was just the transcript of the -- now, I only

20   played four pages.

21             THE COURT:  Well, why don't you make a list of the --

22             MR. WARREN:  We are.

23             THE COURT:  -- defense exhibits, and we will take a

24   look at that and get that out.  Okay?  Mr. Lloret?

25             MR. LLORET:  I guess the final thing I wanted to ask

1    Your Honor, does Your Honor want these documents for review

2    before they're sent back to the jury or not?

3            THE COURT:  I will take a look at them, but counsel

4    have all looked at them.  Counsel have agreed that there is no

5    problem with sending those out, that they represent an

6    appropriate index of calls, an appropriate index of exhibits.

7            MR. MCMAHON:  Yes, Your Honor.

8            THE COURT:  All right.

9            MR. WARREN:  Yes, Your Honor.

10           MR. HARMELIN:  Yes, Your Honor.

11           MR. WARREN:  Like section 4, exculpatory evidence,

12   they've carved that out.

13           MR. LLORET:  No.  None of that in there.  Okay.

14   Thanks, Your Honor.

15           THE COURT:  All right.

16           MR. LLORET:  Shall we mark these, Your Honor, in some

17   fashion?

18           MR. WARREN:  Call them court exhibits.

19           MR. LLORET:  I can mark them with Government's --

20   pick a Government's exhibit in the 800 series just so that they

21   have an identifier on them for the record.

22           THE COURT:  Well, they would not be listed on the

23   list though.

24           MR. LLORET:  We'd get into a self referential

25   problem.

1       MR. WARREN:  We can have these as -- you know, I've

2    had -- the last time we did that, I think we just marked it as

3    court exhibits.

4       THE COURT:  I think it would appropriate.  Counsel

5    have all agreed that they should go out with the jury.  We'll

6    mark them as Court exhibit 1 and 2.

7       MR. LLORET:  And, Your Honor, if Your Honor could

8    give -- I always -- I mean, this is a great convenience, I

9    think, for the jury, but if they can be cautioned again that

10   obviously, this is not evidence.  It's done for their

11   convenience, and the evidence is -- is the evidence.

12      THE COURT:  All right.

13      MR. LLORET:  And their recollection controls.

14      THE COURT:  All right.

15      MR. LLORET:  Thank you, Your Honor.  Your Honor, I'll

16   hand these up to the Court.

17      THE COURT:  Okay.

18                         (Pause)

19      MR. LLORET:  Your Honor, Mr. -- Agent Armstrong

20   raises a point which I guess is perhaps we could ask the

21   jurors, if they want the whole 700 series that Agent Armstrong

22   relied upon in creating financial -- obviously, they're

23   available and we can give them back to them.  That's a

24   substantial volume of documents.  I think at least three or

25   four boxes.

1    We're fine with that, but if they want to be more

2    specific -- I don't know that they can be, but if they can be

3    more specific, we can try to isolate for them, but if they want

4    the whole -- the whole thing, we'll give them the whole thing

5    gladly.

6         MR. WARREN:  Judge, I think they're responding to my

7    argument to take a look at these records, because they weren't

8    really kept all that uniformly or that much together to begin

9    with.  I mean, that's --

10        THE COURT:  Well, we will tell them that they're --

11   the documents are in evidence.  There are boxes full of them.

12   If they want to be more specific, they can do that.  If they

13   want --

14        MR. LLORET:  If they want them all --

15        THE COURT:  -- all of them, we will send them out.

16        MR. LLORET:  That's fine.  Thank you, Your Honor.

17                          (Pause)

18        THE COURT:  Okay.  Mr. Finney, do you want to bring

19   the jurors in?

20                          (Pause)

21        MR. LLORET:  Your Honor, if I may address something

22   with the Court and with counsel, I'm aware that the --

23   obviously, the transcripts are not in evidence --

24        THE CLERK:  Please rise.

25        THE COURT:  We'll talk about it at sidebar,

 1  Mr. Lloret.

 2          MR. LLORET:  Very well.

 3                  (Jury in)

 4          THE COURT:  Okay.  Ladies and gentlemen, have a seat.

 5  The foreperson of your jury has sent out a request for certain

 6  exhibits.  I want to go through your request and tell you what

 7  we can give you and what we can't.

 8          Ladies and gentlemen, with regard to the first

 9  request, Menace tapes, the Menace tapes were not offered into

10  evidence during the course of this trial.  They are not

11  available for your consideration.

12          Exhibit 525HHH, 502P1, and 501Z1, with regard to

13  525HHH, to the extent that that was used during the course of

14  the trial, we will send that exhibit out to you.  502P1 and

15  502Z1 -- 501Z1 we will send out for your consideration.

16          Ladies and gentlemen, the request for phone calls --

17  phone call transcripts and wires, we do not have an ability to

18  send out to you the recording or wires of those phone calls.

19  If you want to hear any phone call, we can play it for you, but

20  we will have to bring you back into court to hear.

21          The next request is New Jack City: The Next

22  Generation.  Again, that videotape was shown to you.  If you

23  wish to see it again, we can play it for you, but it will have

24  to be out here in the courtroom.  We can -- we do not have the

25  ability to play that for you back in the jury room.

1       Grand jury testimony, with regard to the grand jury

2   testimony, that testimony was not offered into evidence, and we

3   do not have that testimony for you with the exception you heard

4   read certain excerpts from testimony with regard to Thais

5   Thompson.  If you wish to have those sections reread to you, we

6   can do that.

7       Organizational charts, there were no organizational

8   charts actually offered into evidence during the course of the

9   trial.  So those are not available.

10      NVR mortgage paperwork, Pike Creek file, we have

11  those exhibits.  They were offered into evidence during the

12  trial.  We will send them out with you.

13      Take Down financial records, I am advised that the

14  Take Down financial records are in probably four large boxes.

15  We can send those boxes out to you if you want all of those

16  records.  They were offered into evidence during the trial.

17  On the other hand, if you request specific records, we will try

18  to find them and give those to you.

19      So it's entirely up to you, ladies and gentlemen.  If

20  you want all of the records in the jury room, you may have

21  them.  If you want some of them, specify exactly what you'd

22  like to have.

23      And easel and paper, we can do that.  We'll give you

24  an easel and paper and even writing instruments for it.  Okay?

25      Now, for your convenience, ladies and gentlemen,

1   counsel have agreed to send out as -- what we've marked Court

2   exhibit 1, Court exhibit 2.  They are an index of the calls

3   that were made and which you heard and which you saw the

4   transcripts of.  There is also an index of trial exhibits, all

5   the trial exhibits.  Counsel have agreed that this index, court

6   exhibit 1 and court exhibit 2, both accurately reflect the --

7   and index the calls and index exhibits.  So we're going to send

8   that out for your convenience to help you determine what it is

9   you may want to see or hear.  Okay?

10              Ladies and gentlemen, I'm going to send you back out

11  at this point and ask you to continue your deliberations.

12  Again, if there are any additional requests and based upon what

13  I have said to you, I imagine there will be.  But in any event,

14  write down the request, specific request, and we will attempt

15  to accommodate your request.  All right?

16              Counsel, anything further?

17              MR. MCMAHON:  No, Your Honor.

18              MR. WARREN:  No, sir.

19              THE COURT:  All right.  Mr. Finney, you want to take

20  the jury out?

21              THE CLERK:  Please rise.

22                        (Jury out)

23              THE COURT:  Counsel, Mr. Lloret, you were saying

24  something.

25              MR. LLORET:  I was just saying, Your Honor, what