# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION NO. 05-440-08 |
| v. | : | CIVIL ACTION NO. 15-5562 |
| | : | |
| TIMOTHY BAUKMAN | : | |

**MEMORANDUM**

**SURRICK, J.**                                                                                               **August 5, 2024**

Defendant Timothy Baukman ("Baukman" or "Defendant") was sentenced on November 2, 2010, to a term of 360 months imprisonment and ten years of supervised release for his role in a $25 million cocaine sales conspiracy. (ECF Nos. 1347, 1894.) Baukman moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (Mot., ECF No. 1682; Am. Mot., ECF No. 1693.) We previously dismissed all of Baukman's Section 2255 claims, except for his assertions that his trial counsel was ineffective (1) for allegedly failing to inform Defendant of his possible sentence exposure and ability to enter a plea of guilty and (2) by not introducing the film *Menace* into evidence. (ECF No. 1894.) We granted Defendant's unopposed requests for an evidentiary hearing on these two issues. (*Id*.) After holding an evidentiary hearing, we will deny Baukman's remaining Section 2255 claims.

**I.     BACKGROUND**

On February 21, 2007, the grand jury returned a 194-count Fifth Superseding Indictment against Alton Coles and twenty-one co-defendants, including Baukman. (ECF No. 295.) The first six co-conspirators, including Defendant, went to trial in January of 2008. The Government presented extensive evidence of the conspirators' $25 million cocaine sales operation and related gun possession, money laundering, and various other crimes. On March 4,

2008, after almost eight weeks of testimony and nearly a week of jury deliberations, the jury returned a verdict of guilty against Defendant on one count each of conspiracy in violation of 21 U.S.C. § 846 (Count 1), continuing criminal enterprise (CCE) in violation of 21 U.S.C. § 848 (Count 2), maintaining a storage facility in violation of 21 U.S.C. § 856(a)(2) (Count 61) and 21 U.S.C. § 841(a)(1) (Count 62), two counts of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Counts 63, 68), thirty-two counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i) (Counts 89-120), and fifty-five counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (Counts 121-175). (ECF No. 745.) His second § 924(c) count (Count 68) was dismissed after conviction. (ECF No. 1348.) Defendant was sentenced to 360 months in prison and ten years of supervised release. (ECF No. 1347.) Jack McMahon, Esq. represented Defendant. (*Id.*)

Defendant filed the instant Habeas Corpus Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, Or Correct Sentence by A Person In Federal Custody (Mot.) and an amended Motion (Am. Mot.), in which he raised seven claims of ineffective assistance of counsel and requested an evidentiary hearing on each issue. We denied Defendant's Motion as to five of his claims and granted his unopposed request for an evidentiary hearing to hear testimony about (1) whether counsel's advice to Defendant regarding plea negotiations was ineffective and (2) whether counsel's decision not to admit the *Menace* film into evidence was ineffective. (ECF No. 1894.) We held an evidentiary hearing on January 26, 2023, at which Baukman and his trial counsel testified. (ECF No. 1914.)

## II.     LEGAL STANDARD

Under 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct the prisoner's sentence.  Courts may afford relief under Section 2255 on a number of grounds including "that the sentence was imposed in violation of the Constitution or the laws of the United States."  28 U.S.C. § 2255(a).  As a remedy for an unlawfully imposed sentence, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."  28 U.S.C. § 2255(b).  We accept the truth of a defendant's allegations when reviewing a Section 2255 motion unless those allegations are "clearly frivolous based on the existing record."  *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005).

## III.    DISCUSSION

We address Baukman's two remaining claims of ineffective assistance of counsel and conclude that his trial counsel was not ineffective and that he is not entitled to relief.

In order to establish a Sixth Amendment ineffective assistance of counsel claim, a defendant must show that: (1) his attorney's performance was deficient, and (2) that the deficient performance prejudiced his defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish deficient representation, a defendant must show that counsel's performance "fell below an objective standard of reasonableness under prevailing professional norms."  *Buehl v. Vaughn*, 166 F.3d 163, 169 (3d Cir. 1999) (citing *Strickland*, 466 U.S. at 688).  To establish prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 695.  Under *Strickland*, counsel is presumed to have acted within the range of

"reasonable professional assistance." *Id.* at 689.

### A. Trial Counsel was Not Ineffective with Respect to His Communications with Baukman about Plea Negotiations.

Baukman argues that his trial counsel, McMahon, was ineffective when he allegedly failed to advise Baukman how the Sentencing Guidelines applied to his case "even in the most basic terms." (Mot. at 31 (ECF pagination).) Baukman maintains that McMahon did not advise him that he could plead guilty without cooperating with the Government and that he proceeded to trial without this critical information. (*Id*. at 32.)

Baukman and McMahon recounted two different versions of their conversations about Baukman possibly pleading guilty. At the evidentiary hearing, Baukman testified that McMahon never discussed the Sentencing Guidelines with him. (01/26/23 Hrg Tr., ECF No. 1914, at 39:23-40:1.) He testified that the Sentencing Guidelines and their effect if he entered a guilty plea were never discussed. (*Id*. at 44:17-45:2.) He testified that he was not aware of the penalties he faced other than that he faced the maximum penalties. (*Id*. at 40:2-4.) Baukman testified that McMahon never provided in writing what the Sentencing Guidelines might be or what he would face if he was found guilty of all counts at trial. (*Id*. at 52:4-9). McMahon never told him in writing what he could get if he pled guilty and "got certain points off" either. (*Id*. at 52:10-13.) This case was Baukman's first contact with the federal criminal justice system, and so he was not familiar with the Sentencing Guidelines. (*Id*. at 53:10-15.)

Baukman testified that he wrote to McMahon about thirty times, but that McMahon never responded to him. (*Id*. at 41:4-23.) Baukman believed that he had copies of the letters that he sent to McMahon, but he did not have them with him in Court. (*Id*. at 57:6-12.) He also stated that he would call McMahon's office, but that they never spoke on the phone. (*Id*. at 42:5-14.)

4

All of their communications took place during in-person prison visits at the Federal Detention Center ("FDC"), where he was incarcerated, pre-sentencing.  (*Id*. at 42:15-24.)  Baukman recalled approximately three in person visits with McMahon during the course of the four-and-a-half-year representation.  (*Id*. at 43:8-15.)

In particular, Baukman testified that he wrote to McMahon about seeking "some sort of a plea agreement."  (*Id*. at 45:3-5.)  When he first entered the FDC, he was placed in a protective unit.  (*Id*. at 43:5-9.)  The Government requested proffers from other people arrested and in custody, but Baukman said that he was not interested in a proffer because he didn't plan on cooperating.  (*Id*. at 45:11-16.)  "Once this case is done and over with, I don't want any strings attached with the streets or the Government.   I want to get back to making movies," Baukman testified.  (*Id*. at 45:7-20.)  Nevertheless, Baukman heard that Coles was offered 20 years, and so he testified that he asked McMahon to see "the best he could do for me."  (*Id*. at 45:21-23.)  Baukman testified that he made clear to McMahon that he wanted to explore the possibility of pleading guilty without cooperating.  (*Id*. at 46:10-12.)  Baukman testified that in his first letter to McMahon, he asked him about exploring possible guilty plea options that did not involve cooperation.  (*Id*. at 53:18-21.)  According to Baukman, he never got a response from McMahon.  (*Id*. at 46:13-15.)

Baukman testified that, early on in his custody, he ran into somebody he knew and he was told that other guys that were pleading guilty were cooperating, and so Baukman assumed "that the only way that you could plead guilty in the federal system is by cooperating."  (*Id*. at 52:13-21.)  According to Baukman, McMahon "didn't clear [] up" that one could plead guilty without cooperating.  (*Id*. at 52:23-24.)  Instead, Baukman recalled McMahon telling him to

5

trust him and that jurors will convict him of a lesser offense because the evidence "barely mentioned" him.  (*Id*. at 52:23-53:9.)

Baukman acknowledged that at his detention hearing, the maximum sentence was read into the record.  (*Id*. at 54:15-20.)  He didn't catch the amount of time but his girlfriend at the time was present, and she told him afterwards that the judge had said that he could face up to 40 years in prison.  (*Id*. at 54:17-56:14.)  Baukman recalled that McMahon told him not to worry, that he is not looking at that much time.  (*Id*. at 54:17-22.)

McMahon recalled his communications with Baukman about his sentencing exposure and plea negotiations differently.  McMahon testified that it was his practice to discuss with clients the various benefits of pleading guilty and that he discussed this with Baukman.  (*Id*. at 7:11-8:17.)  He recalled that he explained to Baukman the effect on sentencing if he cooperated, but right from the beginning, Baukman was not interested in cooperating.  (*Id*. at 8:21-9:11.) McMahon testified that he discussed the Sentencing Guidelines with Baukman multiple times throughout the representation, including that he could get a three-point reduction if he pled guilty.  (*Id*. at 9:19-10:1.)  McMahon recalled that Baukman was "a bright guy" and understood their conversation about the Sentencing Guidelines.  (*Id*. at 11:1-15.)  McMahon recalled that Baukman "was always, from the beginning, intent on going to trial."  (*Id*. at 11:19-21; *see also* 11:22-12:13.)

McMahon did not recall getting a letter or a series of letters from Baukman asking if the Government was going to make a plea offer or about exploring pleading guilty.  (*Id*. at 23:10-16.)  McMahon is sure that he discussed plea options with Baukman due to the severity of the case and the amount of time he was facing.  (*Id*. at 24:1-4.)  With respect to plea negotiations

6

with the Government, McMahon testified that the only thing that was discussed with the Government was Baukman pleading open and getting a three-point reduction.  (*Id*. at 24:9-12.)  The Government was not willing to negotiate a fixed prison sentence, and cooperation was out of the question for Baukman.  (*Id*. at 24:6-12, 14-16.)  McMahon testified that he discussed the option of pleading to the indictment and getting a three point reduction with Baukman.  (*Id*. at 24:21-25:13.)  But Baukman was not interested in pleading guilty to the conspiracy and getting a three point reduction "because the Guidelines were too high."  (*Id*. at 24:19-20.)  McMahon maintained that it was Baukman's decision not to take the open plea and to go to trial in light of his defense.  (*Id*. at 26:19-23, 27:15-18.)

The right to effective assistance of counsel extends to the plea negotiation process.  *See Lafler v. Cooper*, 566 U.S. 156, 162 (2012).  Defendants asserting ineffective assistance of counsel claims related to plea negotiations must satisfy both prongs of the *Strickland* test.  *Hill v. Lockhart*, 474 U.S. 52, 57 (1985).  To satisfy the prejudice prong, "defendants must demonstrate a reasonable probability [that] they would have accepted the earlier plea offer had they been afforded effective assistance of counsel."  *Missouri v. Frye*, 566 U.S. 134, 147 (2012).  "Defendants must also demonstrate a reasonable probability [that] the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it."  *Frye*, 566 U.S. at 147.  To establish prejudice, "it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time."  *Id*.

As counsel for the Government recognized in his argument at the evidentiary hearing, Baukman and McMahon gave different accounts of their communications about Baukman's

7

sentence exposure and plea options.  (*See* 01/26/23 Hrg Tr. at 61:2-12) (recognizing that while McMahon testified about his standard procedures communicating with clients about their sentence exposure and option to plead guilty, Baukman gave a different account, which is "sort of a credibility determination for Your Honor").  Which narrative we credit affects our assessment whether McMahon's conduct was deficient.  However, we need not determine whether McMahon's conduct was deficient, because even assuming that it was, Baukman cannot show that he was prejudiced by it.

In this case, Baukman cannot show "a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time."  *Frye*, 566 U.S. at 147.  First, Baukman did not testify at the evidentiary hearing that he would in fact have pled guilty, and McMahon testified that Baukman was vocal about not pleading guilty to an open plea, even with a three-point reduction, in light of the time he faced.  (*See id.* at 24:19-25:13.)  Second, after he was convicted at trial, Baukman was sentenced to a term of 360 months in prison.  (ECF 1347.)  His offense level was 44, criminal history 1, which resulted in a range of life plus 60 months for a 924(c) charge.  (01/26/23 Hrg Tr. at 62:13-15.)  If he had pled guilty and got the three-level reduction, his Sentencing Guidelines would have been offense level 41, criminal history category number 1.  (*Id*. at 62:16-18.)  The range would have been 324 months to 404 months, plus 60 months for the 924(c).  (*Id*. at 62:18-19.)  The minimum would have been 384 months.  (*Id*. at 62:20.)  As a result, the 360-month sentence Baukman received was lower than his Sentencing Guidelines would have been had he pled guilty and gotten the benefit of the three-point reduction.  (*Id*. at 62:21-22.)  Accordingly, Baukman cannot show that "there is a reasonable probability that his

8

sentence would have been more favorable had he pursued a plea agreement." *United States v. Gonzalez-Rivera*, 217 F. App'x 166, 170 (3d Cir. 2007).

In his argument, John Griffin, habeas counsel for Baukman, argued that Baukman is "presumptively prejudice[d]" if the Court were to find that McMahon "did not go over the Guidelines, did not properly advise him of that, and did not explore, at the request of the Defendant who made those requests to him in writing, to explore guilty plea options, not cooperation."  (*Id*. at 68:10-14.)   Without citing any authority, Griffin maintained that such errors are "fundamental constitutional error[s]" and would be a "fatal blow to the Government." (*Id*. at 68:15, 69:23-70:1.)   "You can't go back from there if someone wasn't aware or was not counseled by his [a]ttorney as to what his rights were proceeding forward," Griffin asserted. (*Id*. at 69:24-70:1.)   He continued:

> I suggest to this Court that's a fatal issue, because if someone isn't apprised of what their constitutional rights are, about the ability to plead guilty, the ability to have points knocked off, the ability to pursue certain departure issues[.] . . . If that standard is not met, that supersedes everything going forward.   That's not subject to any type of a, well, he wasn't prejudiced by the fact that he didn't know his rights. That's a presumptively prejudicial situation, if that is, in fact, what this Court [might] find.

(*Id*. at 71:9-19.)   Nevertheless, Baukman's argument fails in light of the clear precedent that a defendant must demonstrate that they were prejudiced to succeed on an ineffective assistance claim related to plea negotiations.  *See, e.g.*, *Hill*, 474 U.S. at 57; *Frye*, 566 U.S. at 147. Accordingly, this claim is denied.

9

**B.     Trial Counsel was Not Ineffective for Not Introducing the *Menace* Video into Evidence.**

Baukman argues that his trial counsel was ineffective for not introducing a video he co-produced and co-directed, *Menace*, into evidence.  (Mot. at 7, 37-39.)  According to Baukman, items seized in various search warrants in this case were not for drug distribution but were merely props used in the movie, and introducing the video into evidence would have undermined the Government's case.  (*Id*. at 37.)

At trial, Baukman's co-defendant Coles testified that he and others created a feature length film about a drug dealer who wanted to be a musician, *Menace*, and a hip-hop musical, *New Jack City: The Next Generation.  United States v. Coles,* No. 05-440-01, 2024 WL 1286932, at *7 (E.D. Pa. Mar. 26, 2024).  Prior to trial, Cole's counsel objected to playing parts of *New Jack City* because it was prejudicial, as it showed various acts of violence and knowledge of packaging cocaine.  *Id*.  The Court deferred decision until trial.  *Id*.  At trial, Cole's counsel played clips of *New Jack City* for the jury; *Menace* was not shown.  *Id*.  Coles testified that the drugs and various other drug-related items featured in both movies were fake, and that some of the guns featured in *New Jack City* were fake.  *Id*.  During deliberations, the jury requested, among other things, to view *Menace*, but it was not shown because it was not admitted into evidence*. Id*.

McMahon testified at the evidentiary hearing that he thought that the movie had no value to Baukman's defense for multiple reasons and that he did not introduce it into evidence as a result.  (01/26/23 Hrg Tr. at 31:7-32:11, 33:19, 63:3-15.)  Baukman's defense was not that the guns and drugs seized were props.  (*Id*. at 15:21-25, 17:4-7, 28:13-15.)  McMahon's main strategy was to chip away at the most serious counts in the Indictment and argue that the

10

Government did not have sufficient evidence that Baukman was engaged in a conspiracy with Coles and was his right-hand man.  (*Id*. at 63:6-15.)  McMahon tried to distance Baukman from Cole, but the movie undercut this defense and "put[] them all together."  (*Id*. at 31:24-32:1.)  McMahon didn't think that he should admit the film through Coles's testimony, who McMahon described as "the worst witness I ever seen in my life," and McMahon maintained that Baukman was not going to testify.  (*Id*. at 31:7-32:11, 33:19.)

McMahon described Cole's testimony that he was not leading a drug ring but that the drug paraphernalia and other items were props for music videos as "the most ridiculous testimony I ever heard in my entire life" and "absurd."  (*Id*. at 14:9-15:16.)  It "was so beyond any sense that you couldn't even deal with it."  (*Id*. at 15:19-20.)  "[A]fter watching Mr. Coles testify about *New Jack City* and the various other stories about props and cut, and all these other things, I wanted to be as far away from that nonsense as I possibly could."  (*Id*. at 17:18-21.)  McMahon was concerned that introducing the video could jeopardize his credibility with the jury.  (*Id*. at 16:18-22, 18:13-20.)  As a result, McMahon deliberately tried to distance himself from the "nonsensical defense" surrounding *Menace* and props and instead tried to focus on "keep[ing] credibility with the jury" as to his legal arguments and evidence that Baukman was not a part of the conspiracy, which he thought was a "viable defense."  (*Id*. at 18:13-20; *see also* 18:21-19:13.)

Meanwhile, at the evidentiary hearing, Baukman testified that he directed and produced *Menace* and sought the distribution deal.  (*Id*. at 46:16-22.)  He maintained that the drugs in the movie were not actual drugs.  (*Id*. at 47:23-24.)  Baukman hired a gunsmith to handle the guns used in the film.  (*Id*. at 48:17-23.)  Baukman testified that McMahon knew that the items in the

11

movie were props.  (*Id*. at 49:18-20.)

According to Baukman, "The whole plan from everybody's attorney[s] was [that] the tapes were going to be played.  And I was going to testify because I knew the ins and outs of the movie."  (*Id*. at 50:1-3.)  Coles was never going to testify, but at trial, he and his lawyer "threw a monkey wrench" and put him up there, and so then he and his co-defendant "just backed off." (*Id*. at 50:4-7.)  Some items like maps that were seized by the police were used in the scene selection "as tools of the trade," and if the whole movie had been played, the jury "would have seen these items in the set," Baukman explained.  (*Id*. at 51:17-52:3.)

To show that counsel's performance was deficient, "the defendant must show that counsel's representation fell below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 688.  "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  *Id.* at 689 (quotation omitted).  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."  *Id.* at 690.

"To overcome the *Strickland* presumption that, under the circumstances, a challenged action might be considered sound trial strategy, a habeas petitioner must show either that: (1) the suggested strategy (even if sound) was not in fact motivating counsel or, (2) that the actions could never be considered part of a sound strategy."  *Thomas v. Varner*, 428 F.3d 491, 499 (3d Cir. 2005).  "At first, the presumption is that counsel's conduct might have been part of a sound strategy.  The defendant can rebut this 'weak' presumption by showing either that the conduct

12

was not, in fact, part of a strategy or by showing that the strategy employed was unsound." *Varner*, 428 F.3d at 499-500. However, "[i]f the [Government] can show that counsel actually pursued an *informed* strategy (one decided upon after a thorough investigation of the relevant law and facts), the 'weak' presumption becomes a 'strong' presumption, which is 'virtually unchallengeable.'" *Id*. at 500 (citations omitted). Here, McMahon's testified that his decision not to introduce *Menace* into evidence was informed by his assessment that the video could undercut Baukman's defense, further tie Baukman to Coles, and jeopardize his credibility with the jury. Baukman cannot overcome the presumption that McMahon's decision reflected a sound strategy.

Not only can Baukman not demonstrate that his trial counsel's performance was deficient, but Baukman cannot show that he was prejudiced by McMahon's decision not to introduce *Menace* into evidence. The jury heard testimony from Coles about the *New Jack City* and *Menace* videos and that the drugs in *Menace* were fake, and they rejected the defense and convicted Coles and Baukman. *Coles*, 2024 WL 1286932, at *7; (*see* 01/26/23 Hrg Tr. at 64:24-65:10.) As we held with respect to the same ineffective assistance challenge raised by Coles, "considering the overwhelming evidence against Defendant, . . . he cannot show 'a reasonable probability that . . . the result of the proceeding would have been different.'" *Coles*, 2024 WL 1286932, at *7 (quoting *Strickland*, 466 U.S. at 694); (*see also* 01/26/23 Hrg Tr. at 65:11-17, 66:2-8, 66:12-23.) Accordingly, this claim also fails.

13

## IV.     CONCLUSION

For the foregoing reasons, we will deny Baukman's remaining claim in his motions to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.   (ECF Nos. 1682, 1693.)   We will also deny a certificate of appealability, as Baukman has failed to make the requisite "substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   The Clerk of Court is directed to mark this matter as closed.   An appropriate Order follows.

**BY THE COURT:**

  */s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**